C. Frank **BRADFORD**, et al., **Plaintiffs,**

v.

Lorin L. **MOENCH**, et al., **Defendants.**

No. 87–C–0078S.

United States District Court,
D. Utah, C.D.

July 9, 1987.

Robert M. Anderson, Ross C. Anderson, John T. Anderson, William P. Schwartz, Hansen & Anderson, Salt Lake City, Utah, for plaintiffs.

Christopher L. Burton, George W. Pratt, Michael O'Brien, Jones, Waldo, Holbrook &

McDonough, Salt Lake City, Utah, for Lorin L. Moench and Richard Moench.

Henry Nygaard, Salt Lake City, Utah, for Robert Beckstead and Copper State Financial Corp.

Denis R. Morrill, Prince, Yeates & Geldzahler, Salt Lake City, Utah, for John Taggart.

Richard M. Taylor, Taylor & Taylor, Spanish Fork, Utah, for Snell Olsen.

## ORDER

SAM, District Judge.

The defendant Lorin and Richard Moench, Richard Beckstead, Commercial Security Financial Corporation and John M. Taggert, filed a motion to dismiss the plaintiffs' complaint. The matter was referred to the magistrate under 28 U.S.C. § 636(b)(1)(B). The magistrate issued a report and recommendation and amended report and recommendation that the motion to dismiss be denied except as to the plaintiffs' claim under Section 17(a) of the Securities Act of 1933. As to that claim the magistrate recommended the defendants' motion be granted. No objection has been taken to the magistrate's report and recommendation. The court has reviewed the file and adopts the magistrate's report and recommendation. Therefore,

IT IS HEREBY ORDERED that the motion of the above named defendants to dismiss the plaintiffs' complaint is denied, except that the portion of plaintiffs' claim that is based on Section 17(a) of the Securities Act of 1933 is dismissed.

## REPORT AND RECOMMENDATION

The plaintiffs, numerous purchasers of thrift certificates or participants in saving passbook or other accounts of Copper State Thrift and Loan (CST & L) filed suit against CST & L, individual members of CST & L's board of directors and principal stockholders. Copper State Financial Corporation (CSFC) has also been named a defendant. The plaintiffs contend the de-

fendants violated 15 U.S.C. § 78j(b) and Rule 10b–5, 17 C.F.R. § 240.10b–5 of the Securities Exchange Act of 1934; Section 12(2) 15 U.S.C. § 77l (2) of the Securities Act of 1933; Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a); the Utah Uniform Securities Act, § 61–1–22, et seq., U.C.A., 1953; Section 12(1) of the Securities Act of 1933, § 77l (1); 18 U.S.C. § 1961, et seq., R.I.C.O. Act and § 76–10–1601, U.C.A., 1953 R.I.C.E. Act; and that defendants engaged in common law fraud. The plaintiffs' claims for relief are set forth in plaintiffs' amended complaint (File Entry # 8). The defendants, Lorin L. and Richard Moench, filed a motion to dismiss the amended complaint under Rules 12(b) and 9(b), Federal Rules of Civil Procedure (F.R.C.P.), for failure to state a claim for relief (File Entry # 10). Robert B. Beckstead and CSFC have joined in the same motion as filed by defendants Moench. (File Entry # 15, 16). Defendant John M. Taggart also joined in the motion. (File Entry # 21). Motions to stay discovery pending disposition of the motions were also filed, however, the magistrate orally denied those motions at the time of hearing on the motions to dismiss, a written order confirming the denial of a stay on discovery has also been entered. This case has been referred to the magistrate under 28 U.S.C. § 636(b)(1)(B). This report and recommendation is submitted on the various defendants' motions to dismiss.

The motions to dismiss, even when considered with the affidavit of Robert B. Beckstead and other materials [1] must be considered under the assumption that the allegations in the plaintiffs' complaint are true. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Jay v. Chicago Bridge & Iron Co.,* 150 F.2d 247 (10th Cir.1945).

### Defendants' Motion to Dismiss

The defendants' memorandum in support of the motion to dismiss the plaintiffs' amended complaint (File Entry # 11) sets

---

**1.** The Beckstead affidavit does not contradict the allegations of plaintiffs' complaint but explains the operation of SCT & L. Other dis-

covery has not been submitted in support of the motions to dismiss.

forth the essence of defendants' contentions. First, the defendants contend that the plaintiffs' interests in CST & L were not "securities" within the meaning of the Securities Act of 1933 and the Securities Exchange Act of 1934 or the Utah Uniform Securities Act. Whether the plaintiffs' interests in CST & L were securities also directly effects the question of whether the activities alleged to have been engaged in by defendants constitute possible violations of the RICO Act or the RICE Act.

The defendants also contend a private claim for relief cannot be maintained under Section 17(a) of the Securities Act of 1933.

Defendants contend that as to the Third, Fourth, Sixth, Seventh, and Eighth claims, the plaintiffs cannot base a claim for relief on allegations of omissions to disclose because the defendants owed the plaintiffs no duty of disclosure. The defendants also assert the claims of plaintiffs as to securities fraud, common law fraud, RICO and RICE are not pleaded with insufficient particularity to meet the requirements of Rule 9(b), F.R.C.P. The various contentions of the defendants will be considered below.

*Compliance With Rule 9(b), Federal Rules of Civil Procedure*

The allegations as to the specificity of plaintiffs' RICO Act claims will be considered in conjunction with whether the plaintiff has plead a claim for relief under RICO, 18 U.S.C. § 1961, et seq., and RICE, 76–10–1601 et seq., U.C.A., 1953.

Plaintiffs' Sixth Claim for Relief alleges a common law fraud claim against defendants Moench, Beckstead, Taggart, CST & L and CSFC. Pendent jurisdiction is apparently the basis for this court to act on that matter. The claim incorporates the allegations in paragraphs 1–65 of the complaint and more particularly paragraph 20. That paragraph alleges that schemes and artifices to defraud were used and numerous untrue statements of material facts were made as well as omitted which were deceitful. Subparagraphs A, B, and C set forth specific alleged misrepresentations as to the status of CST & L and the status of its deposits in relation to protection of the CST & L assets and depositors accounts. Also in paragraph 20 D other specific representations are set forth (P. 15 Amended Complaint). Omissions are itemized (Id.), Pages 15 and 16 of the amended complaint also set forth representations defendants made or caused to be made to plaintiffs as members of the general public and as depositors or potential depositors. Specific time periods as to CST & L's difficult and allegedly precarious financial condition are set out (See pp. 16–17 of amended complaint); and misrepresentations as to solvency of CST & L were allegedly made and misrepresentations as to what depositors could expect as to their investments. (See p. 8, ¶ L. Amended Complaint). Omissions are also mentioned (Id.) The allegation is made that the misrepresentations were intentional and reasonably relied on by plaintiffs. An allegation as to materiality is also included (Id. p. 19, ¶ 23). An allegation of conspiratorial omission has been set out. (Id. p. 20, ¶ 26). The persons making the alleged misrepresentation or failing to disclose are identified as the defendants, specifically Moench, Beckstead, CST & L, and CSFC. (Id. p. 10). The defendants assert that the allegations are insufficiently particular to meet the standards of Rule 9(b).

Rule 9(b), F.R.C.P., requires an allegation of fraud be plead with particularity. *Central Nat. Bank of Cleveland v. King,* 573 F.2d 669 (10th Cir.1978). Mere general allegations do not meet the requirements of Rule 9(b). *Nolan Bros., Inc. v. United States,* 266 F.2d 143 (10th Cir.1959). However, it must be kept in mind the Rules of Civil Procedure more intended a get away from "booby traps which common law pleaders could set to prevent" litigants from having a day in court. *Lurowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 373, 86 S.Ct. 845, 851, 15 L.Ed.2d 807 (1966). The rules, including those dealing with pleading, were to simplify the litigation process *American Fidelity & Casualty Co. v. All American Bus Lines, Inc.,* 190 F.2d 234, 236 (10th Cir.). cert. denied 342 U.S. 851 (1951). It should also be observed that Rule 9(b) only requires the "circumstances" of fraud be pled not the "elements."

See 5 Wright & Miller, *Federal Practice and Procedure*, § 1297 at 400 (1969).

The defendant relies to some extent on *Cook v. Zions First National Bank*, 645 F.Supp. 423 (D.C.Utah 1986) where Judge Winder dismissed fraud and deceit claims based in part on inadequate pleading. That case is in opposite, in that in this case, plaintiffs have made more particularized allegations of facts and the erring defendants are reasonably identified. Given the number of plaintiffs, specific claims of individual plaintiffs would be duplicative. However, "each defendant" is advised of what the defendant allegedly did that was wrong. Judge Winder did refer to time, place, content and manner as being the standard for proper pleading. See also *Philbosian v. First Financial Securities Corp.*, 550 F.Supp. 61 (D.C.Colo.1982); *Rochambeau v. Brent Explorations, Inc.*, 79 F.R.D. 381 (D.C.Colo.1978). In *Dahl v. Gardner*, 583 F.Supp. 1262 (Utah 1984), Judge Winder found the complaint sufficient in part but dismissed a conclusionary allegation with leave to amend. The case was a securities fraud action. Judge Winder noted:

> Rule 9(b) requires that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.' Fed.R.Civ.P. 9(b). That particularity requirement must be read in conjunction with the general principles of notice pleading set forth in Rule 8, which requires 'a short and plain statement of the claim' for relief. Fed.R.Civ.P. 8(a). In striking a balance between those two rules, Wright and Miller note: 'Perhaps the most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare a responsive pleading.' 5 C. Wright & A. Miller, Federal Practice and Procedure § 1298 (1969).

> In this case, plaintiffs' complaint states in detail the alleged misrepresentations and omissions. Moreover, the complaint states the time of the alleged fraud, the persons involved and the facts and trans-

actions underlying the fraud. The complaint certainly provides sufficient detail to give notice of the alleged fraud to the defendants to enable them to prepare an answer. The motion to dismiss the fraud claims under Rule 9(b) or alternatively for a more definite statement must therefore be denied.

Id. 1267.

See also, *In re Home-Stake Production Co., Securities Litigation*, 76 F.R.D. 337 (D.C.Okla.1975).

Of course, normally allegations on information and belief are insufficient. However, the allegations in this case go beyond mere information and belief and are specific. c.f. *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374 (2d Cir.1974) cert. denied 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975).

Of great significance is the recent case of *Seattle First National Bank v. Carlstedt*, 800 F.2d 1008 (10th Cir.1986). The issue involved a counterclaim to a suit by a bank. The counterclaim alleged violations of federal securities laws and the trial court dismissed the allegations for failure to meet the standards of Rule 9(b), F.R.C.P. See 101, F.R.D. 715 (W.D.Okla.1984). The Court of Appeals noted it had previously taken a liberal approach in securities fraud cases. Id. p. 1101, see e.g. *Clegg v. Conk*, 507 F.2d 1351 (10th Cir.1974) cert. denied 422 U.S. 1007, 95 S.Ct. 2628, 45 L.Ed.2d 669 (1975). The Court reversed and held the trial court had erred in dismissing the counterclaim. The Court said:

> In *Trussell v. United Underwriters, Ltd.*, 228 F.Supp. 757, 774–75 (D.Colo. 1964), the court elaborated upon the Rule 9(b) requirements:

>> Rule 9(b) does not ... require the pleading of detailed evidentiary matter, nor does it require any particularity in connection with an averment of intent, knowledge, or condition of mind. It only requires identification of the circumstances constituting fraud or mistake. That requirement means ... that individual plaintiffs should identify particular defendants with

whom they dealt directly, and from whom they purchased stock; that individual plaintiffs should designate the occasions on which affirmative statements were allegedly made to them—and by whom; and that individual plaintiffs should designate what affirmative misstatements or half-truths were directed to them—and how.

We believe this is a correct statement of Rule 9(b) requirements in securities fraud cases. We hold the defendants' counterclaim and amended counterclaim satisfy Rule 9(b) as explained in Trussell.

The counterclaims identify the counter-defendants with whom the counter-plaintiffs dealt directly, and from whom they purchased stock; the occasions on which affirmative misstatements were allegedly made to counter-plaintiffs; and, what affirmative misstatements or half-truths were directed to counter-plaintiffs and how those statements were made.

See also *Luce v. Edelstein*, 802 F.2d 49 (2d Cir.1986).

Gauging the plaintiffs complaint against the standards of these cases and the particulars of the allegations set out in the complaint referenced hereinbefore, it must be concluded that the plaintiffs' complaint meets the standards of pleading for common law and securities fraud under Rule 9(b).[2]

The pleading gives the defendants notice, demonstrates sufficient particularity to insure the allegations is not a mere "strike suit," and is precise enough to insure the defendants are not being casually injured in their reputations. This is adequate to avoid the pitfalls of fraud litigation and also to avoid retrogression to common law pleading. See Ruhman, Lively, Mell, *The Pleading of Fraud: Rhymes Without Reason*, 60 So.Cal.L.Rev. 959 (1987).

*Omissions*

■ The defendants argue that to the extent that the plaintiffs' claims are based on omissions to disclose material matter, that there must be a duty to disclose before liability can be imposed. The defendants argue there is a duty to disclose only if there is a confidential or fiduciary relationship shown.

As to the defendants' claims in the area of plaintiffs' securities and RICO claims, the argument is without merit. The defendants place emphasis on *Chiarella v. United States*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980). However, that case sets the standard of duty in a relationship entirely different than the circumstances alleged in plaintiffs' amended complaint. *Chiarella* dealt with a person outside of the line of a securities transaction.[3] Chiarella was a financial printer engaged to print takeover bids. The Supreme Court expressly approved *Cady v. Robert & Co.*, 40 SEC 907 (1961) which imposed a duty to disclose on "corporate insiders: particularly officers, directors or controlling stockholders." 445 U.S. at 227, 100 S.Ct. at 1114. The relationship between corporation and share purchaser is a relationship imposing a duty of disclosure. Id. p. 228, 100 S.Ct. at 1114–15. In the instant case plaintiffs, if their security argument has merit, are customers and defendants of the corporate entity and its officers. This is enough to require disclosure. Id. See *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) holding that a bank as transfer agent had a duty to make disclosure to shareholders in a tribal stock company. "Thus, administrative and judicial interpretations have established that silence in connection with the purchase or sale of securities may operate as a fraud ..." 445 U.S. at 230, 100 S.Ct. at 1115. The dicta in *Chiarella* supports the plaintiffs' position. Further, the claims of the plaintiffs are not allegations of complete silence, but half truths and concealments. This type of misrepresentation is a traditional basis for re-

---

**2.** The conclusion as to the securities claims presupposes the application of the securities laws to this situation.

**3.** The same is true of *Windon Third Oil & Gas Drilling Partnership v. FDIC*, 805 F.2d 342 (10th Cir.1986) (investors suit against accountant).

covery for fraud.[4] The plaintiffs' RICO and securities actions are joined for the purposes of the legal theory of these actions. The defendants' omissions argument must be rejected[5] as to the RICO and securities claims.

As to plaintiffs' common law fraud claims, the observations made with reference to concealments and partial disclosure will support the claims in this case as against a motion to dismiss. *Restatement, Second Torts,* supra, § 529.

However, to the extent that as fiduciary duty may be required under Utah law, *Hal Taylor Associates v. Union America Inc.,* 657 P.2d 743, 749 (Utah 1982); *Von Hake v. Thomas,* 705 P.2d 766 (Utah 1985), the facts as alleged in the plaintiffs' complaint show the alleged making of representations to secure investments. The facts if shown could well support an inference of "trust and reliance" by plaintiffs on defendants special knowledge of the thrift industry and its financial markets and activities. See *Hal Taylor Associates v. Union America, Inc,* supra p. 749. Although there is authority for the proposition that banks owe no fiduciary duty to depositors, *Denison State Bank v. Madeira,* 213 Kan. 684, 815, 640 P.2d 1235 (1982) (see also defendants' memorandum p. 23), the thrift industry is not a bank and the factual circumstances may go beyond a mere depositor/financial institution relationship.[6] If a broader or more specialized relationship actually existed a fiduciary duty may be found. *Freegard v. First Western National Bank,* 738 P.2d 614. 57 Utah Adv.Rep. 6 (1987). *Vai v. Bank of American National Trust and Sav. Assn.,* 56 Cal.2d 329, 15 Cal.Rptr. 71, 364 P.2d 247 (1961). Further, the facts alleged would support concealment as a basis for relief (See Restatement Second Torts § 550, 551) or negligent misrepresentations. (Restatement (Second) Torts § 552). At this stage of the proceedings the plaintiffs have made out a basis for relief. See Rules 8(a), 9(b), F.R. C.P. This is not to say that as the case unfolds the facts may not give rise to a motion for summary judgment as to any particular plaintiff. See *Milliner v. Elmer Fox & Co.,* 529 P.2d 806, 808 (Utah 1974).

*Plaintiffs' § 17(a) Claim*

■ The plaintiffs in the Third Claim for Relief in their amended complaint seek relief against the defendants under Section 17(a) of the Securities Act of 1933, 15 U.S. C. § 77q(a). The defendants claim that no private action may be maintained on such a basis. The Circuit Courts of Appeal that have considered this issue are divided. The Fifth and Eighth Circuits have held no such action is proper. *Simpson v. Southeastern Inv. Trust,* 697 F.2d 1257, 1258 (5th Cir.1983); *Shull v. Dain, Kalmca & Quail, Inc.,* 561 F.2d 152, 159 (8th Cir.1979). The

---

**4.** See *Kronfeld v. First Jersey National Bank,* 638 F.Supp. 1454 (D.C.N.J.1986). *Restatement, Second, Torts* § 529. See also Id., Comment A.

**5.** To the degree plaintiffs' RICO claims are based on mail fraud, 18 U.S.C. § 1341, concealment may be a basis for a "scheme to defraud," and support such a claim. c.f. *United States v. Pintar,* 630 F.2d 1270 (8th Cir.1980); *United States v. O'Malley,* 707 F.2d 1240 (11th Cir.1983); *United States v. Allen,* 554 F.2d 398 (10th Cir. 1977) cert. denied 434 U.S. 836, 98 S.Ct. 124, 54 L.Ed.2d 97; *Williams v. United States* 368 F.2d 972 (10th Cir.1966) cert. denied 386 U.S. 997, 87 S.Ct. 1317, 18 L.Ed.2d 345.

**6.** It should be recognized that the Court of Appeals in *Hotmar v. Lowell H. Listrom & Co., Inc.,* 808 F.2d 1384 (10th Cir.1987) observed as to a claim of fiduciary relationship between a stockbroker and customer:

Under Kansas law the existence of a fiduciary duty depends on the facts and circumstances in each case. *Denison State Bank v.*

*Madeira,* 230 Kan. 684, 640 P.2d 1235 (1982). However, one may not unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary. Id. In this case, Brown never agreed to control Hotmars' account. In fact, Brown testified he never accepted discretionary accounts. Without an agreement by Brown to monitor the trading in Hotmars' account, no fiduciary duty was imposed on Brown to execute only those orders he considered "suitable" for one in Hotmars' position, and hence, no breach of fiduciary duty was shown.

808 F.2d 1387 n. 3.

In this case defendants did manage the plaintiffs' investments to some extent, and the facts and circumstances of the relationship may support a fiduciary claim. Also, there is nothing to suggest the above statement of law is inconsistent with the before mentioned Utah cases.

Second, Fourth, and Seventh Circuits have held a private action may be maintained. *Kirshner v. United States*, 603 F.2d 234, 241 (2d Cir.1978); *Newman v. Prior*, 518 F.2d 97, 99 (4th Cir.1975); *Surowitz v. Hilton Hotels Corp.*, 342 F.2d 596, 604 (7th Cir.1965). The Ninth Circuit has recently joined the circuits recognizing a private cause of action under § 17(a). *Mosher v. Kane*, 784 F.2d 1385, 1391 (9th Cir.1986) cert. denied —— U.S. ——, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986). See also *Securities Investor Protection Corp. v. Poirier*, 653 F.Supp. 63, 67 (D.C.Or.1986) abandoning the position of *Ahern v. Gaussoin*, 611 F.Supp. 1465 (D.C.Or.1985) (no private action); *Brabham v. Patenta*, 614 F.Supp. 568, 569–71 (D.C.Or.1984) (no private action).

Within the Tenth Circuit the districts are divided as to whether a private action may be maintained under Section 17(a). In, *Westland Energy 1981–1 LTD v. Bank of Commerce and Trust Co.*, 603 F.Supp. 698 (D.C.N.D.Okla.1984) the court found such an action was proper. In *Woods v. Homes & Structures of Pittsburgh, Kansas*, 489 F.Supp. 1270, 1284–88 (D.C.Kan.1980) and *In re Storage Technology Corp. Securities Litigation*, 630 F.Supp. 1072 (D.C.Colo. 1986) the courts have concluded no private action can be maintained under § 17(a). As both parties acknowledge, the Tenth Circuit appears to have taken a posture towards the position precluding such an action. *State of Ohio v. Peterson, Lowry, Rall, etc.*, 651 F.2d 687, 689 (10th Cir.1981) cert. denied 454 U.S. 895 (1981). Two earlier cases are not of significance. *Hanraty v. Ostertag*, 470 F.2d 1096 (10th Cir.1972) (no holding or dicta, mere reference); *de-Haas v. Empire Petroleum Co.*, 435 F.2d 1223 (10th Cir.1970) (same). In *Brown v. Producers Livestock Loan Co.*, 469 F.Supp. 27, 31 (D.C.Utah 1978) Judge Anderson merely examined the statute of limitations that might be applicable to such a claim.

Recently, Judge Greene addressed the issue in *Leiter v. Kuntz*, 655 F.Supp. 725 (D.C.Utah 1987). Judge Greene canvassed the position within the Tenth Circuit and

concluded that no private claim for relief could be maintained under 17(a).

Plaintiff's Third Cause of Action alleged fraud in the sale of a security under section 17(a) of the 1933 Act. 15 U.S.C. § 77q. Since the statutory language of § 17(a) is similar in many respects to § 10(b) and Rule 10b–5 of the 1934 Act, and given the judicially recognized private cause of action under 10(b) and Rule 10b–5, some courts have held that a private cause of action exists under § 17(a). See *Stephenson v. Calpine & Conifers II, Ltd.*, 652 F.2d 808 (9th Cir.1981). The United States Supreme Court has withheld ruling on this issue. See *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 734 n. 6, 95 S.Ct. 1917, 1924 n. 6, 44 L.Ed.2d 539 (1975). Likewise the Tenth Circuit has not directly decided whether an implied right of action under § 17(a) exists. The matter was addressed in *State of Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 651 F.2d 687 (10th Cir.1981) wherein the court expressed the following dicta:

> [T]here is considerable doubt as to whether a private right of action exists under § 17(a) of the 1933 Act. See *Woods v. Homes & Structures of Pittsburgh, Kansas*, 489 F.Supp. 1270, 1284–88 (D.Kan.1980), where the court reviewed conflicting authorities in detail and came to the conclusion that no private action exists. The Supreme Court has not yet resolved the issue. See *Aaron v. Securities Exchange Commission*, 446 U.S. 680, 689, 100 S.Ct. 1945, 1951, 64 L.Ed.2d 611 (1980). Our decision today with respect to § 10(b) of the 1934 Act would apply equally to § 17(a) of the 1933 Act, if a private cause of action were assumed to exist under the latter statute.

Id. at 689 n. 1. See also *In re Storage Technology Corp. Securities Litigation*, 630 F.Supp. 1072, 1079 (D.Colo.1986).

This court has refused to find an implied right of action under § 17(a) of the 1933 Act. In *Noland v. Pickett*, C80–0034W slip op. (February 12, 1982), Honorable David K. Winder specifically granted a motion to dismiss a claimed

cause of action under § 17(a) of the 1933 Act. After a short discussion of legislative intent under the 1933 Act, Judge Winder concluded:

There is nothing on the face of section 17(a) indicating a private right of action for damages, or creating a benefit for an 'especial' class of persons. Compare *Cannon v. University of Chicago*, 441 U.S. 677, 689–94 [99 S.Ct. 1946, 1953–56, 60 L.Ed.2d 560] (1979), with *Transamerican Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 18–19 [100 S.Ct. 242, 246–47, 62 L.Ed.2d 146] (1979). Nor is there any indication in the legislative history evidencing such an intent; on the contrary, every indication is that private damages were not intended. See *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 867 (2d Cir.1968) (Friendly, J., concurring); *McFarland v. Memorex Corp.*, 493 F.Supp. 631, 652 (N.D.Cal.1980). Therefore the court can only conclude that no private right of action for damages arises under section 17(a) of the 1933 Act ...

Id. at 3–4; see also *Omicron Indus. v. Ihlenburg*, C83–1290W slip. op. at 2–3 (July 22, 1986) [Available on WESTLAW, DCT database] (no private right of action under § 17(a)). We are similarly persuaded that no private right of action exists under § 17(a) of the 1933 Act. Accordingly, defendants' Motion to Dismiss plaintiff's third cause of action is granted.

Although the Supreme Court's decision in *Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) provides strong theoretical support for an argument supporting a private action under 17(a),[7] the status of the law in this district warrants granting the defendants' motion to dismiss plaintiffs' third claim for relief.

**RICO and RICE**

■ The plaintiffs in their Seventh and Eighth claims for relief have contended for violations of the federal RICO Act, 18 U.S. C. § 1961 et seq. and the Utah RICE Act, 76–10–1602 et seq. U.C.A., 1953. This court has previously ruled that for the purposes of a motion of the nature of defendants' motion to dismiss, the construction of RICO and RICE and the requirements for pleading are the same. *Hoopes v. Zions First National Bank*, C–85–1323 S (D.C. Utah 1986) [Available on WESTLAW, DCT database]. See also *Basche, Halsey, Stuart, Shields v. Tracy Collins Bank*, 558 F.Supp. 1042 (D.C.Utah 1983); *Morgan v. Ebert*, 85–C–1295 W (D.C.Utah 1986) [Available on WESTLAW, DCT database].[8]

A RICO pleading[9] must meet the standards of Rule 9(b), F.R.C.P. *Grant v. Union Bank*, 629 F.Supp. 570, 575–76 (D.C. Utah 1986); *Hoopes v. Zions First National Bank*, supra; *Cook v. Zions First National Bank*, 645 F.Supp. 423 (D.C.Utah 1986); *McKean v. Zions First National Bank*, C–85–1230 W (D.C.Utah 1986) [Available on WESTLAW, DCT database].

■ If the plaintiffs have a valid claim for relief under their securities claims they have alleged an adequate predicate of a "pattern of racketeering" to meet RICO standards. *Plains Resources Inc. v. John R. Gable*, 782 F.2d 883 (10th Cir.1986). Recently, in *Condict v. Condict*, 815 F.2d 579 (10th Cir.1987) the court in addressing a RICO claim involving partnership ranch property said:

"In Sedima the Supreme Court held that a violation of 1962(c) requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering and that to state a claim under 1962(c) must allege each of these four elements."

---

7. *Schwartz & Wiles, Do Curren & Huddleston Validate a Private 17(a) Right of Action?* Nat'l L.Jnl., July 23, 1984.

8. As to the similarity of RICE and RICO see Moxley and Weisenfeld, *An Overview of Utah's Civil RICE,* 14 Ut. Bar Jnl. 1–12– p. 31 (1986).

9. Reference to RICO shall be deemed to include RICE unless expressly indicated.

The court found the complaint deficient in the allegation as to a pattern of racketeering. The court quoting from its decision in *Torwest DBC, Inc. v. Dick,* 810 F.2d 925 (10th Cir.1987), noted that a pattern of racketeering requires an ongoing activity and that a single discreet activity will not suffice. *Torwest* at 928–29. It should be said at this point, that the allegations of plaintiffs' complaint and the ongoing nature of the activity in this case fully satisfy the *Torwest DBC* and *Condict* standards.

The elements mentioned in *Condict* are more generalized than those outlined in *Moss v. Morgan Standley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983) cert. denied 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984), which is the lead case on the elements for a civil RICO claim. However, the requirements are the same in substantive content.

Very recently in *Thompson v. Wyoming Alaska, Inc.,* 652 F.Supp. 1222 (D.C.Utah 1987) Judge Greene held that plaintiffs had failed to plead a RICO case [10] by alleging an adequate factual basis of a continuing scheme.[11] In applying the standards of that case to the ongoing and continuous nature of the enterprise alleged in this case there is no factual deficiency or legal inadequacy in plaintiffs' pleading. In, *Grant v. Union Bank,* supra, the court held the allegations for a RICO claim to be insufficient where there was a failure to plead the predicate crimes with particularity. The court said "predicate crimes must be pled with sufficient specificity to establish prob-

able cause that a crime has been committed." Id. p. 575. Citing *Bache, Halsey, Stuart, Shields, Inc. v. Tracy Collins Bank and Trust,* supra. " 'Thus a factual statement similar to a bill of particulars is needed in pleadings that allege a violation of the RICO treble damages provision.' " Id. p. 575 quoting 558 F.Supp. at 1046.[12] Judge Greene spoke in terms of a strict pleading requirement. This is justified because of the peculiar nature of a RICO suit. First, because of the relationship between the civil action and the predicate requirement of criminal activity. Second, because the term "racketeering" is one inherently frought with prejudice and subject to use as unwarranted leverage in a complex business case. Third, a case involving racketeering ought not to await jury resolution unless there is in fact substance to the case. Fourth, where the potential consequences of liability are so severe, the legitimacy of the claim ought to be determinable at an early time. Fifth, the complexity of RICO litigation and its attendant expense warrants a substantial basis for crediting the claim before parties are subjected to such a litigation burden.[13] Although no single reason specified may be sufficient to justify a strict rule of pleading, when collectively considered, the mentioned reasons lend support to a requirement of particularized pleading.[14] The question is whether the plaintiffs have met that standards. The allegations as to securities violations are more than sufficient to

**10.** The case was resolved on summary judgment under Rule 56, F.R.C.P.

**11.** See also *Huntsman-Christensen Corp. v. Entrada Industries Mountain Fuel Supply Co.,* 639 F.Supp. 733 (D.C. Utah 1986) as referenced in the *Thompson* case.

**12.** In, *United States v. Killip,* 819 F.2d 1542 (10th Cir.1987) the Court described an indictment in a criminal RICO case. The indictment pleading was not more specific than the plaintiff's allegations in this case.

**13.** In Goldsmith & Keith, *Civil RICO Abuse: The Allegations in Context,* 1986 B.Y.U.L.Rev. 55, 90–92 (1986) the authors dispute a contention that civil RICO actions have been abusive or are inherently abusive. However, they suggest that the requirement of Rule 9(b), F.R.C.P., for a

particularized, allegation of fraud if applied to civil RICO actions, can assist in preventing abuses. Thus the 9(b) standard provides a useful guideline for determining the sufficiency of RICO claims. See cases collected Id. p. 91 n. 254.

**14.** The magistrate has doubts as to whether a "bill of particulars" standard or one of probable cause is fully commensurate with Rules 8(a) and 9(b), F.R.C.P. c.f. *Cooper v. Zions First National Bank,* supra (Winder, J); *Seattle First National Bank v. Carlsteadt,* supra. A standard of showing a good faith basis for a belief that the predicate standards have been violated seems more reasonable. See *American National Bank & Trust Co. v. Haroco, Inc.,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) where the Supreme Court appeared little concerned about a more generalized pleading.

support probable cause, if a security is involved. Also, as observed before, the pattern of racketeering is adequately set forth.[15] Further, the "conduct" of the alleged racketeering activity is spelled out. If the allegations listed under plaintiffs' Seventh and Eighth claims for relief were the sole basis of plaintiffs' complaint, it would be deficient as simply containing legalistic conclusions. The defendants challenge to the pleading would be well founded. However, the allegations in support of the RICO/RICE claims set forth the prior seventy-one (71) paragraphs of the complaint. When examined "together" the allegations are sufficient to establish the "probable cause" for a RICO claim. However, it should be observed that the defendants have not at this time challenged the issue of whether there is an adequate person/enterprise distinction to satisfy the requirement that there be a difference between the two in order to make a case under RICO. See *Grant v. Union Bank,* supra; *Hirsch v. Enright Refining Co.,* 751 F.2d 628 (5th Cir.1984); *Schofield v. First Commodity Corp.,* 638 F.Supp. 4 (D.C.Mass.1985); *Hoopes v. Zions First National Bank,* supra; Rakoff, *The Federalization of Commercial Torts,* 10 ALI–ABA Course Materials Journal 4, p. 7, 15 (1986). However, since this issue has not been briefed and the factual context of such an argument not developed, as between the individual defendants and the corporate defendants, no position is expressed on this matter at the time and a resolution of the defendants' motion to dismiss favorably to the plaintiffs on the

RICO claims should be without prejudice to later reconsideration.

The motion to dismiss the RICO/RICE claims should be denied.

### Substantive Securities Claim

 At this point, it is apparent that the linchpin of plaintiffs' claim for relief is based on whether the plaintiffs' interest in CST & L was a security. The express terms of neither the 1933 Securities Act, 15 U.S.C. § 77a, et seq., nor the Securities Exchange Act of 1934, 15 U.S.C. § 78a, et seq. exhaust the considerations necessary to determining what is a security. 15 U.S.C. § 77b is the definition section of the Securities Act of 1933 and is expansive in its description of security, § 78b(1), to include a variety of forms of financial activities, structures and interests. 15 U.S.C. § 78c(a)(10) defines security under the Securities Exchange Act of 1934 and is equally broad. However, neither definitional section answers the question of what is a security in this case.[16] The nature of the transaction must be considered. Substance governs over form. *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975); *Vincent v. Moench,* 473 F.2d 430 (10th Cir. 1973).[17] In *Moench* the Court observed:

"Whether a particular investment constitutes a security depends upon the facts and circumstances of the case ... Substance is exhalted over form and emphasis is placed on *economic reality.*" (Emphasis added). Id. p. 435.

See e.g., *Continental Marketing Corp. v. Securities & Exchange Commission,* 387 F.2d 466, 470 (10th Cir.1967).

**15.** This includes either a securities predicate claim or a mail fraud claim. (18 U.S.C. § 1341, 1343).

**16.** The 1982 Amendments to § 77b(1) and 78c(a)(10) do mention "certificate of deposit." See infra n. 28.

**17.** Defendants have suggested plaintiffs' claim is defeated by the definitional section of § 78c(a)(10) because of the exclusion of "draft, 'bill of exchange or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months ...'" However, this may depend on the nature of the transaction. It does not depend on the maturity of the instrument as such. This appears clear from the cases. e.g. *S.E.C. v. American Board of Trade*

*Inc.,* 751 F.2d 529, 538 (2d.Cir.1984); *Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 92 (5th Cir.1975). *Zabriskie v. Lewis,* 507 F.2d 546, 550 (10th Cir.1974). If there were any doubt, the legislative history, H.R.Rep. 85, 73d Cong., 1st Session 15 (1933); S.Rep. No. 47, 73d Cong., 1st Session 3–4 (1933) makes it clear the definitional language applies only to short term commercial paper not usually made available to the public. This is apparently the position taken by the S.E.C. S.E.C. Release No. 33–4412, September 20, 1961; 1984 Fed.Sec. 2 Rep. (CCA) ¶ 2045. Also the 1982 addition of certificates of deposit to the definitional sections helps to clarify the intent of Congress as it may apply in this case.

This position is embodied in the discussion of what is a security in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946) where the Court said the term "embodies a flexible rather than a static principle one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of money of others on the promise of profit." The "economic reality" standard was stated as the consideration in *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967). In *United Housing Foundation, Inc. v. Forman*, supra, the Court again spoke in terms of economic reality [18] in holding the stock in a non-profit housing corporation was not a security because the shares in question did not have the characteristics of stock and the economic reality was that the transaction was not an investment for profit, but the acquisition of low cost rental housing. Id. p. 851.[19] However, in *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1785) and *Gould v. Ruefenacht*, 471 U.S. 701, 105 S.Ct. 2308, 85 L.Ed.2d 708 (1985) the court focused on the economic characteristics of the instruments involved, and not the underlying economic circumstance, and rejected the "sale of business doctrine" and held that the sale of stock of a business was the sale of a security. There the Court focused on the facial identity of the instruments involved and the statutory definition, to find a security "on its face." Thus, the Supreme Court appears to have adopted two standards of determining whether a financial transaction involves a security. First, if it is a facially obvious security instrument it will be *included* as a security without consideration of the underlying economic circumstances. If however, the instrument is not a classic security or within the statutory definition of security under the two applicable acts,[20] the "economic realities" will be examined to determine whether the transaction warrants characterization as a security.[21] If the function of the transactions is not related to the need for securities regulation the transaction will be excluded. See Rosin, *Functional Exclusions From the Definition of a Security*, 28 South Tex.L.Rev. 333 (1986).

The Court of Appeals for the Tenth Circuit has clearly recognized and adopted the functional approach and "economic realities" test.[22] Recently in *Meyer v. Dans un Jardin, S.A.*, 816 F.2d 533 (10th Cir.1987) the court held a franchising agreement was not a security. The court applied a "functional" test in determining whether the franchising agreement was security. The

**18.** The economic reality standard of *S.E.C. v. W.J. Howey Co.*, supra, for determining if a financial transaction is subject to regulation as a security, has been given a wide application by the courts. *Annual Review of Federal Securities Regulation*, 40 Business Lawyer, 159 (1984).

**19.** In, *International Brotherhood of Teamsters, et al. v. Daniel*, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979) the Court held the securities Acts did not apply to a noncontributing, compulsory pension plan. In so ruling the Court observed:

"To determine whether a particular financial relationship constitutes a [security] ... 'the test is whether the scheme involves an investment of money in or common enterprise with profits to come solely from the efforts of others.'" Citing *Howey v. Forman*. The Court also referred to 'economic realities of the transaction ...'" Id. p. 558, 99 S.Ct. at 796.

**20.** The definition of security in the Utah Uniform Securities Act, 61–1–13(17), U.C.A., 1953, is roughly the equivalent of the definition of a security under the federal acts discussed above. In *Payable Accounting Corp. v. McKinley*, 667 P.2d 15 (Utah 1983) the Utah Supreme Court said:

"Because most state blue sky laws and the federal securities acts are similar, states frequently rely on federal case law in interpreting state security acts."

Id. p. 17.

The Court quoted from and referred heavily to federal cases especially *S.E.C. v. W.J. Howey Co.*, supra. See also Bennett, *Securities Regulation in Utah: A Recap of History and The New Uniform Act*, 8 Utah L.Rev. 216 (1963).

**21.** This seems to be the same under the Utah Uniform Securities Act. c.f. *Payable Accounting Corp. v. McKinley*, supra.

**22.** The parties have filed excellent memoranda and discussed the analysis of the issues from several courts. However, the Tenth Circuit cases, those from this District, and those of the United States Supreme Court are the only judicial decisions that have status as precedent.

court referred to the *Howey* standard and referred to the court's prior decisions that are compatible with the functional analysis. *Crowley v. Montgomery Ward & Co.*, 570 F.2d 875 (10th Cir.1975); *Mr. Steak, Inc. v. River City Steak, Inc.*, 460 F.2d 666 (10th Cir.1972). The Court in *Meyer* rejected a claim that it was free to consider an alternative functional analysis such as "risk capital." Id. at 536.

> "To the extent that the risk capital test differs from the *Howey* test as reaffirmed in *Forman*, 421 U.S. at 852, 95 S.Ct. at 2060–61, and *Daniel*, 439 U.S. at 558, 561, 99 S.Ct. at 795–96, 797, we must follow the Supreme Court's formulation."

Id. at 536.

In, *Zabriskie v. Lewis*, 507 F.2d 546 (10th Cir.1974), the court held notes of a commercial character are not securities under the Securities Act of 1933 or the Securities Exchange Act of 1934. The court noted that under the transaction the note has "a commercial character," Id. p. 551, rather than an investment character. At the time of *Zabriskie* the court observed it had "not determined what tests should be applied in determining which notes come within the definition of a security." Id. 550. The court did actually analyze the functional aspects of the transaction and instrument at issue. Id. p. 551.

The distillate of the above analysis is that there may be a "facial" inclusion or exclusion of a transaction as a security or there may be a functional inclusion or exclusion.[23] In this regard both parties rely on the Supreme Court's decision in *Marine Bank v. Weaver*, 455 U.S. 551, 102 S.Ct. 1220, 71 L.Ed.2d 409 (1982). The facts of the case were not as straight forward as the issue raised in this case would desire. The Weavers had pledged a six-year bank certificate of deposit to guarantee a loan from Marine Bank to a meat packing company. In exchange Weavers received the right to fifty percent of the meat company's profits. Weavers also received the right to veto the companies future borrowing and the use of some agricultural land. The Weavers contended Marine Bank misrepresented the use of proceeds of the loan in violation of section 10(b) of the 1934 Act. The Third Circuit had held that the bank certificate and the profit sharing arrangement could be securities. *Weaver v. Marine Bank*, 637 F.2d 157 (3rd Cir.1980). The Supreme Court referred to the fact that the 15 U.S.C. § 77b, the definitional section of the 1933 Act and 15 U.S.C. § 78c, the definitional section of the 1934 Act both use excluding language "unless the context otherwise requires ...", therefore, recognizing the functional approach as having application outside of the facially inclusive circumstances. See *Rosin*, supra, 28 So. Tex.L.Rev. p. 359, 363. The court did not consider the underlying pledge transaction, but did focus on the deposit certificate's characteristics. The court concluded there was no need for protection under the federal securities laws. Id. 455 U.S. at p. 559, 102 S.Ct. 1225. In a footnote the court continued that other certificates of deposit might be securities. Id. p. 560 n. 11, 102 S.Ct. at 1225–26 n. 11:

> "It does not follow that a certificate of deposit or business agreement between transacting parties invariably falls outside the definition of a 'security' as defined by the federal statutes. Each transaction must be analyzed and evaluated on the basis of the content of the instruments in question, the purposes intended to be served, and the factual setting as as whole."

Thus the footnote takes as functional approach to the analysis of whether a cer-

---

**23.** A security may exist in one form of a transaction under one statute but not another. See 12 U.S.C. § 378, and *Securities Indust. Assn. v. Bd. of Governors of Federal Reserve System*, 468 U.S. 137, 139–40, 104 S.Ct. 2979, 2981, 82 L.Ed.2d 107 (1984) (Glass-Steagall Act Construction). The court applied a combination facial and functional test in holding that commercial pa- per was a security. However, at one point the court read the Glass-Steagall Act and the Securities Act of 1933 and the Securities Exchange Act of 1934 as part of a general congressional approach to the term security. Id. pp. 150–152, 104 S.Ct. pp. 2986–87. This issue warrants further analysis, unnecessary to the resolution of the motion before the court.

tificate of deposit is security.[24] This is fortified by the court's discussion of the term security. Id. pp. 555–59, 102 S.Ct. at 1223–25. The court referring to *S.E.C. v. United Benefit Life Ins. Co.*, 387 U.S. 202, 211, 87 S.Ct. 1557, 1562, 18 L.Ed.2d 673 (1967) and *S.E.C. v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 352–53, 64 S.Ct. 120, 124–25, 88 L.Ed. 88 (1943) said "the test is what character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect." No broad federal remedy for all fraud was intended. *Weaver v. Marine Bank*, supra, 445 U.S. at p. 556, 102 S.Ct. at 1223–24. A certificate of deposit was not "expressly" excluded from the definition of security. Id. p. 557, 102 S.Ct. at 1224. The court then stated why the certificate of deposit was not a security and was to be treated differently from other "long-term debt" obligations.

In our view, however, there is an important difference between a bank certificate of deposit and other long-term debt obligations. This certificate of deposit was issued by a federally regulated bank which is subject to the comprehensive set of regulations governing the banking industry. Deposits in federally regulated banks are protected by the reserve, reporting, and inspection requirements of the federal banking laws; advertising relating to the interest paid on deposits is also regulated. In addition, deposits are insured by the Federal Deposit Insurance Corporation. Since its formation in 1933, nearly all depositors in failing banks insured by the FDIC have received payment in full, even payment for the portions of their deposits above the amount insured.

\* \* \* \* \* \*

We see, therefore, important differences between a certificate of deposit purchased from a federally regulated bank and other long-term debt obligations. The Court of Appeals failed to give appropriate weight to the important fact that the purchaser of a certificate of deposit is virtually guaranteed payment in full, whereas the holder of an ordinary long-term debt obligation assumes the risk of the borrower's insolvency. The definition of 'security' in the 1934 Act provides that an instrument which seems to fall within the broad sweep of the Act is not to be considered a security if the text otherwise requires. It is unnecessary to subject issuers of bank certificates of deposit to liability under the antifraud provisions of the federal securities laws since the holders of bank certificates of deposit are abundantly protected under the federal banking laws. We therefore hold that the certificate of deposit purchased by the Weavers is not a security.

Id. pp. 557–59, 102 S.Ct. at 1224–25.

The decision, therefore, turns not on a facial interpretation of security under the definitions section of the applicable acts, but on a functional analysis of the particular certificate.[25]

The holding in *Weaver v. Marine Bank*, supra, is really very narrow when applied to certificates of deposit. It excludes certificates or the like of federally regulated banks. The decision in *Weaver* is therefore not a *per se* basis for a motion to dismiss in this case. A functional analysis must be made in this case to determine whether the financial instruments in this case, that are claimed to be securities, actually fall within the 1933 and 1934 Acts as well as the Utah Uniform Securities Act.[26] For this reason arguments of both parties as to the guidance to be derived from pre-*Weaver* cases is premature.[27] The question then is

**24.** The term "business agreement" could include a passbook type of arrangement. The physical form of the acknowledgment of the transaction is not of controlling consequence. See *S.E.C. v. C.M. Joiner Leasing Corp.*, supra.

**25.** The court rejected a functional analysis of the transaction. Id. 455 U.S. at p. 559, n. 9, 102 S.Ct. at 1225 n. 9.

**26.** See Rosin, *Historical Perspective on the Definition of Security*, 28 So.Texas L.Rev. 575, 589 (1987).

**27.** *Burrus, Cootes & Burrus v. Mackethan*, 537 F.2d 1262 (4th Cir.1976) vacated 545 F.2d 1388 (1976) cert. denied 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977). The case is of little assist-

whether given the posture of the pleadings and other documents,[28] is there a basis for the application of the various securities statutes to the parties. The allegations contained in the plaintiffs' complaint are sufficient to create an issue that cannot be resolved one way or the other at this point. Many factors are relevant to the issue. See Arnold, *"When is a Car a Bicycle? and Other Riddles: The Definition of a Security Under the Federal Securities Laws,* 33 Cleveland State L.Rev. 449, 460–461 (1984–85); *Weaver v. Marine Bank,* supra, n. 9.

In *Wolf v. Banco National de Mexico,* 549 F.Supp. 841 (N.D.Cal.1982) appeal dismissed 721 F.2d 660 (9th Cir.1983), rev'd 739 F.2d 1458 (9th Cir.1984) cert. denied 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985), a post *Weaver* case, the district court held that Mexican certificates of deposit were securities. Id. 549 F.Supp. at 841. The Ninth Circuit reversed. The Court of Appeals reversed because of the extensive Mexican regulatory scheme for such investments.[29] Id. 739 F.2d pp. 1460, 1464. Most recently in *West v. Multibanco Comermex,* S.A., 807 F.2d 820 (9th Cir. 1987) the court accepted the same reasoning and said:

> Wolf requires that in order for a foreign bank offering certificates of deposit

to be exempt from the registration and disclosure requirements of U.S. securities law, the foreign government must have adopted a comprehensive regulatory scheme governing banking operations that 'virtually guarantees' repayment to purchasers of such certificates. Although 'the trial court must hear evidence on the degree of protection that structure offers a depositor against insolvency,' 739 F.2d at 1463, it may not examine the actual operations of the regulatory system to the extent that such inquiry would directly implicate the failure (whether willful or negligent) of officers of the foreign state to enforce their own laws, at least in the absence of consent of the foreign sovereign. As a matter of comity, we presume that Mexican officials are acting in a manner consistent with the requirements of Mexican law.[30]

Although the *West* and *Wolf* cases are of major significance, it appears that a very compelling argument can be made that both cases took too narrow of an approach to the functional issue. The above quoted language seems analytically inadequate in light of the Supreme Court's statement in *Weaver* in footnote 11. See infra.[31]

---

ance since it is pre-*Weaver* and does not adequately analyze the issue against *Weaver* standards. Also, *Bellah v. First National Bank,* 495 F.2d 1109 (5th Cir.1974). If these cases were of controlling significance, *Young v. Seaboard Corporation,* 360 F.Supp. 490 (D.C. Utah 1973) might be twisted to support a claim that the plaintiffs should be allowed to pursue a *per se* securities claim. *Young* does not apply to this case either.

**28.** The, *White Paper on the State of Utah's Response to the Plight of Thrift and Loan Industry,* July 31, 1986 shows that there is significant factual question as to the real nature of the Utah regulatory response. Id. p. 13 etc.

The Amicus brief of the S.E.C.'s in *Weaver v. Marine Bank,* No. 80–1562 Oct. term 1980 is very narrow and properly confines itself to a discussion of congressional intent as to federally regulated banks. Id. p. 15. It also refers to the "special regulatory context" of the case. The brief does reflect the relevancy of the consideration of benefits to be derived from the regulatory scheme of the securities laws.

**29.** It should be noted that *Weaver* precipitated amendments to the definition sections of the

1933 and 1934 Acts to include "certificate of deposit." 15 U.S.C. §§ 77b(1), 78c(a)(10), P.L. 97–303, §§ 1, 2; 96 Stat. 1409. The effect of these amendments is unclear as to these plaintiffs, but they do not change the nature of the applicable analysis in this case.

**30.** The magistrate does not necessarily accept the position of *West* as to the scope of the inquiry on the extent of regulation as correct. That need not be decided at this time. It requires more thoughtful briefing research and argument. However, the statement in *West,* Id. p. 828, should not control discovery. The widest latitude of discovery, commensurate with the ultimate issue to be decided should be allowed.

**31.** Also the magistrate does not wish to preclude either party from fully urging the significance of the Congressional addition of "certificate of deposit" to the definition sections of the 1933 and 1934 securities Acts. However, "certificate of deposit" may not facially apply to passbook accounts. This distinction can be addressed later.

Thus, there are issues to be considered that preclude dismissal of this action on the basis of a contention that the instruments in this case are not securities.

Based on the consideration of the legal assertions in defendants' motion to dismiss, it is concluded that it should be denied, except that so much of plaintiffs' claim in their amended complaint as seeks relief under 17(a) of the Securities Act of 1933 should be dismissed. IT IS SO RECOMMENDED.

Copies of the foregoing report and recommendation are being mailed to the parties. They are hereby notified of their right to file objections hereto within 10 days from the receipt hereof.

DATED this 17th day of June, 1987.

(s) Ronald N. Boyce
United States Magistrate

### AMENDED REPORT AND RECOMMENDATION

Following the preparation and submission of the magistrate's report and recommendation on the defendant's motion to dismiss, an additional case on the question of whether plaintiffs could maintain a § 17(a), 15 U.S.C. § 77q(a) action as private parties and a RICO action predicated on securities violations was uncovered. In, *Metropolitan International Inc. v. Alco Standard Corporation,* 657 F.Supp. 627 (D.C.M.D.Pa.1986) Chief Judge Nealon addressed the issues. He observed:

Defendants contend that plaintiffs cannot bring an action pursuant to § 17(a) of the securities laws, 15 U.S.C. § 77q(a), because there is no private right of action under section 17(a). In support they cite, *inter alia,* Judge Giles' decision in *Kimmel v. Peterson,* 565 F.Supp. 476 (E.D.Pa.1983) in which an implied private cause of action under section 17(a) was specifically rejected. Plaintiffs counter by maintaining that while neither our Court of Appeals nor the Supreme Court has ruled on the issue, the majority of circuits do imply such a cause of action. Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, Document 20 of the Record at 31. After

careful review and consideration, this court joins those courts holding that there is no private cause of action under Section 17(a). *Kimmel v. Peterson,* 565 F.Supp. 476 (E.D.Pa.1983).

Section 17(a), an anti-fraud provision of the Securities Act of 1933, provides:

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q (1976).

In *Kimmel,* Judge Giles, in a well-reasoned opinion, explored the historical background and legislative history of section 17(a). While noting that the numerical weight of authority of case law was in favor of implying a private cause of action, Judge Giles noted that those opinions had done so with very little discussion or analysis. *Kimmel,* supra at 482–83. In contrast, those courts holding no private cause of action under section 17(a) exists, have carefully analyzed the four-prong test enunciated by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The *Cort* test is to be employed to determine whether Congress intended to imply a private cause of action.

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted, that is, does the statute create a federal right in favor of plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to

deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the State, so that it would be inappropriate to infer a cause of action based solely on federal law?"

*Cort,* supra at 78, 95 S.Ct. at 2088 (emphasis in original) (citations omitted). Later, in *Touche-Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed. 2d 82 (1979), the court explained that all four factors should not be weighted equally; rather, the first three were more relevant to any determination because those factors concentrated upon Congressional intent.

In this case, since section 17(a) was enacted to prevent fraud, thus protecting potential victims, *Kimmel,* supra at 486, plaintiffs here are members of the class "for whose especial benefit the statute was enacted." This determination, however, does not end the inquiry.

This court agrees with Judge Giles that the second and third prong of the test have not been met.

[T]he existence of express remedies within the same statute [i.e., sections 11 and 12] militates against a finding of Congressional intent to imply further remedies.... This is especially true here, as section 17(a) is sufficiently broad to cover virtually all activities addressed by sections 11 and 12. As mentioned earlier, however, section 17(a) does not have the internal restrictions and defenses found in sections 11 and 12. Thus, if a private right of action were to be implied under section 17(a), it would become the preferable remedy, rendering sections 11 and 12 entirely superfluous. The complex scheme which Congress wove in the 'express civil liabilities sections would be totally undermined.

*Kimmel,* supra at 487. Thus, "[had] Congress wished to provide a private damage remedy, it knew how to do so and did so expressly." Id. at 488 (quoting *Transamerica Mortgage Advisors v.*

*Lewis,* 444 U.S. 11, 21, 100 S.Ct. 242, 248, 62 L.Ed.2d 146 (1979)).

Nor is the third prong of *Cort* met, which requires consistency with the underlying purposes of the statutory scheme. In *Piper v. Chris-Craft Industries,* 430 U.S. 1 [97 S.Ct. 926, 51 L.Ed.2d 124] (1977), the Court phrased the inquiry in terms of whether the legislative purposes "are likely to be undermined absent private enforcement" or whether it "is necessary to effectuate Congress' goals." ... Measured against any of those standards, an asserted private right of action under section 17(a) fails. Rendering sections 11 and 12 effectively impotent is neither necessary to, nor consistent with, the legislative purposes of the 1933 Act.

*Kimmel,* supra at 488. *Accord Binkley v. Sheaffer,* 609 F.Supp. 601, 602–03 (E.D.Pa.1985) (Judge Troutman following Judge Giles' opinion in *Kimmel,* supra). Inasmuch as the factors weighing Congressional intent militate against implying a private cause of action, it is unnecessary to analyze the fourth *Cort* prong.

In light of the above, the court concludes that it would be inappropriate to imply a cause of action under section 17(a). In this conclusion, the court is not alone. See e.g., *Landry v. All American Assurance Co.,* 688 F.2d 381 (5th Cir.1982); *Shull v. Dain, Kalman & Quail, Inc.,* 561 F.2d 152 (8th Cir.1977) cert. denied, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *Binkley v. Sheaffer,* 609 F.Supp. 601 (E.D.Pa.1985); *Bedford v. Lockhart-Bright Associates,* No. 825574, slip op. (E.D.Pa., Nov. 1, 1985) (Broderick, J.) [Available on WESTLAW DCTU database]; *In re Catanella and E.F. Hutton and Co.,* 583 F.Supp. 1388 (E.D.Pa.1984); *Kimmel v. Peterson,* 565 F.Supp. 476 (E.D.Pa.1983); *Hudson v. Capital Management Intern., Inc.,* 565 F.Supp. 615 (N.D.Cal.1983); *Massaro v. Vernitron Corp.,* 559 F.Supp. 1068 (D.Mass.1983); *Basile v. Merrill Lynch, Pierce, Fenner & Smith,* 551 F.Supp. 580 (S.D.Ohio 1982); *Hill v. DER,* 521 F.Supp. 1370 (D.Del.1981).

Judge Nealon then addressed the RICO claim and found that allegations of securities fraud, section 10(b), and mail fraud to support its claim. The court said a consistent number of alleged securities and fraud violations were adequate to sustain the pattern of racketeering requirement for a RICO action.

"At this point of the litigation, it is premature to hold as matter of law that the plaintiffs can prove no set of facts which would bear out plaintiffs' theory. As a result, defendants Motion to Dismiss will be denied on this issue."

It is believed that this above case supports the magistrate's conclusion in this case.

On page thirty-two (32) of the original report and recommendation refers to "plaintiffs' motion to dismiss." That reference should be "defendants' motion to dismiss." SO RECOMMENDED.

Copies of the foregoing report and recommendation are being mailed to the parties. They are hereby notified of their right to file objections hereto within 10 days from the receipt hereof.

DATED this 19th day of June, 1987.

(s) Ronald N. Boyce
United States Magistrate