302 P.2d 276

**STATE of Utah, Plaintiff and Respondent,**

v.

**Eugene MYERS, Defendant and Appellant.**

**No. 8504.**

Supreme Court of Utah.

Oct. 15, 1956.

366

Eugene Myers, pro se.

E. R. Callister, Atty. Gen., Maurice D. Jones, Asst. Atty. Gen., for respondent.

WORTHEN, Justice.

Defendant Myers was convicted of the crime of grand larceny upon a verdict of a jury and he appeals.

This case is very involved and is further complicated by the fact that defendant Myers represented himself without an attorney at the trial and is prosecuting his

own appeal. In addition the record in the case is incomplete and not in chronological order.

The evidence for the State was as follows. On March 29, 1954, Wayne Luck and Dean Jones, after having made the rounds of a few bars with a Miss Rose Thompson and another girl not involved in this action and after taking the latter home, accompanied Miss Thompson to the Nelson Motor Lodge on South State Street in Salt Lake City, Utah.

Asking the two men to wait in the car, Miss Thompson went to the door of one of the units occupied by a Miss Reser. Defendant Myers was in the room with Miss Reser. Miss Thompson suggested bringing in Luck and Jones; defendant Myers indicated that would be all right with him as he was leaving anyway.

Approximately one hour later, two masked men entered the room and robbed Luck and Jones. Neither of the girls was molested in any way by the masked men, although Luck's and Jones' property was taken from them at gunpoint. The victims were unable to identify either of the two men, but Miss Thompson testified that she recognized the two men by their voices as being Eugene Myers, the defendant, and Oliver Townsend.

Notwithstanding this identification of defendant Myers, on the second morning after the robbery the two girls involved accompanied him to Idaho, where all three were arrested on suspicion of being implicated in this robbery. Two watches were found upon the person of the defendant, which the State contended were the same as those taken from Luck and Jones. Defendant's presence was also shown during the course of the day following the robbery in the company of Miss Reser at another motel in Salt Lake City wherein two wallets were found, claimed by the state to have been taken from Luck and Jones.

Defendant and Townsend were charged jointly with armed robbery and bound over to the district court after preliminary hearing on that charge. Each entered a plea of not guilty. On the morning of the trial after a jury had been impaneled, it appeared that one of the jurors was prejudiced against one of the State's complaining witnesses to the extent of having advised the judge that he had no confidence in him and that he would vote to acquit defendant if the witness just sworn testified. The court recessed and defendant Myers upon the advice of his attorney agreed to plead guilty to a lesser charge of grand larceny if the armed robbery charge was dismissed. Upon Myers' plea of guilty to grand larceny, the original information charging him and Townsend with armed robbery was dismissed.

Seven days later defendant filed an affidavit that he had been coerced into a guilty plea by the threatened withdrawal of his

attorney in the action if he refused so to plead. He asked for permission to withdraw his plea of guilty to grand larceny and substitute a plea of not guilty which was granted.

Between the time defendant pleaded guilty on July 1, 1954, until October 26, 1954, the court appointed three attorneys all of whom were allowed to withdraw as counsel for defendant, the last two apparently without having taken any active part in the case except for an intitial interview with defendant.

On November 30, 1954, defendant added a plea of once in jeopardy to his not guilty plea and his then attorney, the fourth court-appointed attorney to represent defendant, also moved for a bill of particulars which motion was granted by the trial court. This bill of particulars and a further bill furnished later will be hereinafter referred to in some detail.

After negotiations between various judges of the Third District Court, defendant's counsel and the district attorney, the trial of defendant was set for March 15, 1955. On March 11, 1955, upon affidavit and motion of the district attorney, the court appointed two alienists to examine the defendant as to his sanity. On the same date after examination and upon the recommendations of the alienists, the court ordered defendant committed to the Utah State Hospital for one month's observation.

On April 18, 1955, Doctors Henninger and Wingett of the Utah State Hospital testified at a sanity hearing that defendant was insane, and the court ordered his commitment to the Utah State Hospital on the same date, the commitment to continue until defendant was restored to sanity. Neither defendant nor his counsel were present at this hearing on the question of sanity.

On October 26, 1955, the court, upon receipt of a letter from the Utah State Hospital stating that Myers was now sane, ordered his recommitment to the Salt Lake County Jail to await trial in the grand larceny case.

On November 16, 1955, twenty-one days after having been returned from the Utah State Hospital, defendant was brought to court and told he would have to stand trial on November 25, 1955, for grand larceny. Defendant stated he was not able to procure counsel and asked the court to appoint counsel for him, which was done.

On November 19, 1955, the motion of defendant's counsel for a continuance until January 5, 1956, was denied. On November 22, 1955, the attempted withdrawal of defendant's counsel from the case was also denied.

We must not overlook the fact that had defendant been advised, as soon as he was returned from the Utah State Hospital about October 26, that his case would come

on for trial on November 25, 1955, instead of waiting twenty days before so advising him that his court appointed counsel would not have felt required to ask for a continuance in order to prepare for trial.

The trial proceeded as scheduled on November 25, 1955. At the trial defendant protested vigorously that he hadn't been afforded counsel with adequate time for preparation of his case and thereupon discharged this court-appointed counsel and proceeded with his own defense.

At the outset of the trial defendant asked to be allowed to change his plea of not guilty to not guilty by reason of insanity. The court denied the request.

Mr. Jones did not appear as a witness and during the course of the trial, it developed that Mr. Jones was not able to attend in answer to the subpoena because of an accident suffered by him after the robbery and before trial. Consequently, the only state witness who could identify the property claimed to have been stolen was the complaining witness Luck and he was able to identify only his personal belongings taken. He was also the only person to testify to the value of the articles taken.

Mr. Luck testified substantially that his watch, wallet, and glasses were taken from him. He testified that his watch was worth $50, his glasses $30, his wallet $2, and that he had "somewhere less than $20.00 in his wallet." Upon cross-examination he disclosed the information that he had never tried to sell the watch and didn't know its market value.

There was no further testimony as to the value of any articles taken. The testimony taken by itself was of course sufficient to make out value of over $50 and therefore sufficient to sustain a grand larceny conviction.[1]

However, as before stated, one of defendant's many counsel sought and obtained a bill of particulars from the district attorney wherein the following was recited. The motion for the bill of particulars states:

"II. Describe the personal property allegedly stolen from Dean Jones and Wayne Luck as alleged in the information herein, and state the value of each item, if more than one item is involved."

The bill of particulars states:

"2. The personal property stolen from Wayne Luck is one wallet and one Lord Elgin watch. The personal property stolen from Dean Jones is one wallet and one Elgin Deluxe Watch. The value of the property is more than $50.00 total."

Defendant's attorney on December 17, 1954, made a motion for a further bill of particulars which requested:

1. State v. Vigil, Utah, 260 P.2d 539.

"1. State the claimed reasonable market value as of the time of the alleged taking of each of the four items of personal property as described in Particular No. 2 of the Bill of Particulars heretofore filed by the plaintiff." The bill of particulars answering this request stated:

"1. That the wallet of Dean Jones at the time of the alleged robbery had a value of approximately $2.00, or more, and contained $100.00 of lawful money of the United States of America belonging to Mr. Jones; that the Elgin Deluxe watch which it was alleged was also taken had a value of $30.00."

"2. *That the wallet of Mr. Wayne Luck had a value of $2.00 and contained $10.00 lawful money of the United States of America belonging to Mr. Luck; that the Lord Elgin watch allegedly taken from Mr. Wayne Luck had a value of $10.00.*" (Emphasis added.)

 Defendant contends, somewhat ineptly, that there is a fatal variance between the proof and the bill of particulars in that the bill of particulars states that the property taken from Luck was of a value of only $22, insufficient to make out a charge of grand larceny, but only petit larceny.

This contention then raises the question, Can the state at the trial introduce evidence contrary to the bill of particulars which will substantially affect the rights of the defendant?

We hold that it cannot without the grant of a continuance by the court in order to give defendant time and opportunity to meet the new and different evidence. The state will not be allowed to lull defendants into a false sense of security through its allegation of facts and then deny those facts and assert others at the trial when the additional facts mean the difference between conviction and acquittal on the charge as laid.

The issues of a criminal case are shaped by the pleadings of the state, and the entire purpose of a bill of particulars to delineate the particulars of the offense charged and to advise the defendant with particularity the ultimate facts of the crime for which he is charged would be defeated by allowing the state to go beyond its scope and contradict it in matters of substance.

The purpose of the pleadings and bill of particulars has been stated by this court as follows:

" * * * The bill of particulars in a pleading on the part of the state which limits or circumscribes the area or field, the transactions, as to which the state may offer evidence. * * *

The bill of particulars thus limits the field of inquiry under the charge laid in the information, * * *." [2]

"The pleadings, that is, the information, the bill of particulars, the plea, form the issues and limit the accusation to the matters therein alleged and denied." [3]

" * * * The purpose of a bill of particulars is to inform the defendant of the particulars of the offense sufficiently to enable him to prepare his defense." [4]

It was evident from the bill of particulars that the state could not prove any stronger case than petit larceny without the testimony of Dean Jones. It was evident to defendant from the bill also that he needn't concern himself with the value of the property taken from Luck since that was well under the amount required to sustain a charge of grand larceny as distinguished from petit larceny. To allow the state to mislead a defendant who is without counsel at the trial and introduce something beyond the scope of the pleadings does not seem to us to be in accord with substantial justice, notwithstanding the fact that the fault for lack of counsel for defendant may rest with him.

In making the ruling in this case that the state may not, without granting a continuance to defendant to meet the new and different evidence, introduce matters beyond the scope of the pleading; we do not overlook the provisions of 77–21–43, U.C.A. 1953, which provide in part:

"(2) No variance between those allegations of an information, indictment or bill of particulars, which state the particulars of the offense, whether amended or not, and the evidence offered in support thereof shall be ground for the acquittal of the defendant. The court may at any time cause the information, indictment or bill of particulars to be amended in respect to any such variance, to conform to the evidence."

\* \* \* \* \* \*

"(4) No appeal, * * * based on any such * * * variance shall be sustained unless it is affirmatively shown that the defendant was in fact prejudiced thereby in his defense upon the merits."

As we have already stated, it is our opinion that the incorrect material allegations of the bill of particulars prejudiced the defense of defendant on the merits. In

2. State v. Spencer, 101 Utah 274, 117 P.2d 455, 458, overruled on another point State v. Hutchinson, 4 Utah 2d 404, 295 P.2d 345.

3. State v. Anderson, 100 Utah 468, 116 P. 2d 398, 401.

4. State v. Jameson, 103 Utah 129, 134 P. 2d 173, 175.

addition, the statute cannot override the constitutional guarantee that "the accused shall have the right * * * to demand the nature and cause of the accusation against him".[5] It would be a mockery of the constitutional rights of defendant to allow the state to falsely state the particulars of the offense charged and then without amendment and without giving defendant additional time to meet new evidence beyond those particulars obtain a conviction founded on said evidence.

As was stated by this court in the case of State v. Pettit,[6]

"The code of criminal procedure is not designed to eliminate essential averments or to permit the pleading of misleading factual data, whether or not it was done knowingly."

The court in that case construed 105–21–43, U.C.A.1943 (now 77–21–43, supra), to apply to variance, defects, or omissions that pertain to matters of form only rather than matters of substance.

Thus in the instant case had the bill of particulars alleged the value of the property stolen from Luck to be $3 for the wallet, $20 cash, $60 for the watch and $45 for the glasses and the proof had shown them to be worth $2, $10, $50 and $30 respectively, no substantial prejudice to defendant's rights would be shown and the conviction would be affirmed on that ground. When, however, the bill alleges $22 total value and the state offers to and contends it did prove $92, defendant must be afforded time to meet such further allegations of value. It must be remembered that defendant in this case was without counsel and confined to his cell in the Salt Lake County Jail when he was not involved in the actual trial of the case.

The statute itself provides that when substantive rights are affected by the variance between the pleadings and proof, the court may grant relief.

We therefore hold that it was error for the trial court to allow the state to prove at the trial material matters beyond the scope of the bill of particulars without granting a continuance to defendant in this case to enable him to meet this new and different proof.

The conviction of defendant is reversed and the cause remanded for a new trial in conformance with the terms of this opinion.

Costs to appellant.

McDONOUGH, C. J., and CROCKETT, HENRIOD and WADE, JJ., concur.

5. Utah Constitution, Article I, Sec. 12.

6. 97 Utah 443, 93 P.2d 675, 676.