419 P.2d 770

**STATE of Utah, Plaintiff and Respondent,**

v.

**Craig Phillip HAMILTON, Defendant and Appellant.**

No. 10588.

Supreme Court of Utah.

Oct. 31, 1966.

---

Jimi Mitsunaga, Legal Defender, Salt Lake City, for appellant.

Phil L. Hansen, Atty. Gen., Ronald N. Boyce, Chief Asst. Atty. Gen., Salt Lake City, for respondent.

CROCKETT, Justice:

Craig Phillip Hamilton seeks reversal of his conviction by a jury of the crime of robbery. The principal ground asserted is that the court erred in admitting evidence of certain statements he made to the police before being given an opportunity to talk with an attorney.

We view the evidence in the light favorable to the jury's verdict. On March 5, 1965 Mrs. Zella Riding was clerking at the Westside Market in St. George, Utah. At about 9:05 p. m. she and a young boy, Stephen Johnson, were toward the rear of the store restocking shelves when she heard someone enter. She walked toward the front of the store where she saw the defendant. After preliminary words, he took a gun from his pocket, said, "This is a stick up," and demanded the money from the cash register. After receiving all of the paper bills, amounting to about $100, the defendant fled.

Pursuant to information furnished them the police arrested the defendant in Salt Lake City a few days later. The critical aspect of this case centers upon the testimony of Sergeant Donald R. Lyman, an

officer of 10 years' experience, serving in the detective bureau. He testified that the defendant was questioned in the Salt Lake City jail about noon on March 13, 1965:

Q. * * * Would you state who spoke and what was said?

A. * * * The first thing that I said was, I advised the defendant that he had been charged with an armed robbery that happened in St. George.

Q. Washington County, Utah?

A. In Washington County, I advised him that I was a police officer. I advised him that he had a right to counsel and also that anything he might say would be on a voluntary basis and could be used against him.

Q. Did the defendant make any reply to this?

A. As I recall, he said he was going to make arrangements to get an attorney. Rather, he didn't have an attorney at that time.

   *    *    *    *    *    *

Q. Did Mr. Hamilton request an attorney?

A. No, he didn't.

During cross-examination, the following point was made.

Q. Now, Officer you indicated that the Defendant Hamilton said to you that he was going to make arrangements to get one, isn't that right, to get an attorney?

A. I think that was his plan at the time.

Q. And that was his plan?

A. Yes.

Q. So that as far as in his conversation, Officer Lyman, isn't it true that he did want an attorney?

A. He did want one, you say?

Q. Yes.

A. I think he realized he was going to have to have one and did need an attorney.

Q. And that he did want one, that is why he said he was going to make arrangements to get one?

A. Yes, I think he wanted an attorney.

On redirect, this evidence was brought out.

Q. And at that time did he request the use of a telephone?

A. No.

Q. Did he request that you make any calls in his behalf or do anything for him?

A. No.

THE COURT: My question was, what did he say at that time, though, as near as you recall?

A. Well, when I asked him about an attorney, I advised him he had a

right to get an attorney. Well, he said he was going to get ahold of one and he was going to get ahold of Bud Hatch. He said he was going to make arrangements.

■ It is on the basis of the foregoing testimony that the defendant contends that he was denied counsel, and that the court committed error in allowing testimony of statements he made to the officers in this questioning.[1] Some fundamental principles are essential factors to be considered in the problem as to whether prejudicial error was committed. The purpose of the law and of the rules of procedure is not only to safeguard the rights of an accused, but also to see that the guilty are brought to justice. There should be equal concern for justice to the victim and for safeguarding the interests of the public by protecting the persons and property of law-abiding citizens.

■ The importance of the accused's right to counsel at the earliest time practicable is not to be questioned, because it is his means of knowing what his other rights are. We but recently had occasion to reaffirm this right in State v. Seymour[2] and to express this further thought which is applicable to the defendant's contention

here: The reversal of a conviction is not warranted unless there is a deficiency which had some material bearing upon the fairness of the proceeding or had some possible effect upon its outcome. It should be kept in mind that this right to counsel, the same as other such protections which are ingrained in our law,[3] came into being as a protection against certain abuses. Consideration of the question of the fulfillment of this requirement must be correlated with consideration of the purpose it was designed to serve: the protection of one suspected of crime where there is at least some possibility of the existence of some abuse it was intended to guard against. But unless there is some such possibility, and the possibility that it had some adverse effect upon the accused, it should not be divorced from its reason for existence and looked upon as an isolated or theoretical abstraction, an end in itself, the mere technical violation of which would vitiate the entire law enforcement procedure.

■■ It is to be conceded that the defendant may not have been treated precisely as a constitutional lawyer or defense counsel might have desired. But the practicalities of life must be taken into account: that not all police officers are constitutional lawyers who know the niceties of the

1. Reliance is placed on Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (June, 1966).

2. 18 Utah 2d 153, 417 P.2d 655.
3. See statement in Gallegos v. Turner, 17 Utah 2d 273, 409 P.2d 386.

application of constitutional provisions to situations they confront in the performance of their duties. This seems particularly true when even the highest courts are sometimes in disagreement upon such matters; and also change their views from time to time. Because of these considerations and differences in human behavior, it seems wise and necessary, and it does not distort the processes of justice to make reasonable allowance for some variations in procedure. The principle which underlies the protections which the law assures one suspected or accused of crime is that there must be substantial observance of those rights and privileges so that his treatment conforms within commonly accepted standards of decency and fairness.

██ The defendant was advised of the right he complains about being deprived of: the right to have an attorney. He stated his intention to obtain one. But this is not a situation where he indicated he wanted a lawyer before he discussed the accusation with the officer.[4] There is nothing in this record to suggest any likelihood whatsoever that by force or harshness, much less by the often spoken of "police brutality," or that by any form of duress, deception, or promise, he was induced to tell anything which was not true.

After being told that whatever he should say would be on a voluntary basis and could be used against him, he nevertheless proceeded with the conversation and made whatever "admissions" may have been made to Officer Lyman. We say "may have been made" because there is no record brought here as to what the so-called "admissions" were. Perhaps it could reasonably be assumed that evidence so characterized would be adverse to the defendant. However, we do not presume either error or prejudice. The burden of so showing is upon him who seeks to upset the judgment. In the absence of a transcript, we assume that the evidence supports it.[5]

██ Upon our survey of this record we see nothing to indicate that there was any denial of right or abuse of privilege which put the defendant at any substantial disadvantage or prejudice, nor that the treatment given him transgressed the standard of common decency and fairness stated above. There is therefore nothing to justify the reversal of his conviction.

Affirmed.

HENRIOD, C. J., and CALLISTER, McDONOUGH and TUCKETT, JJ., concur.

4. Cf. Escobedo v. State of Illinois and Miranda v. State of Arizona, footnote 1 above, stated to be not retroactive in Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (June, 1966).

5. See Bennett Leasing Co. v. Ellison, 15 Utah 2d 72, 387 P.2d 246.