STATE of Utah, Plaintiff and Appellee,

v.

Steven A. BELL, Defendant and Appellant.

No. 19785.

Supreme Court of Utah.

Sept. 30, 1988.

Rehearing Denied Nov. 25, 1988.

Thomas D. Roberts, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Paul M. Warner, David J. Schwendiman, Salt Lake City, for plaintiff and appellee.

ZIMMERMAN, Justice:

Steven Bell appeals from a conviction of racketeering by means of drug trafficking. Bell asserts that he was not given sufficiently detailed notice of the charges against him to enable him to prepare a defense. We agree and therefore reverse the conviction and remand for a new trial. We also address several issues which may arise in a subsequent trial.

During 1982 and 1983, Weber County authorities conducted a broad investigation of cocaine trafficking allegedly perpetrated by Molly Kingston and a number of individuals associated with her, including Steven Bell. There was evidence that Bell, who owned a convenience store, trafficked in cocaine on the store premises and deposited drug receipts in the store bank accounts.

A grand jury indicted Bell on racketeering charges pursuant to Utah's "RICE" or "Little RICO" statute, Utah Code Ann. §§ 76–10–1601 to –1608 (Supp.1983).[1] The

---

1. At the time of Bell's indictment, the Act was known as the Racketeering Influences and Criminal Enterprise Act, or "RICE." Utah Code Ann. § 76–10–1601 et seq. (Supp.1983). The Utah Act and similar provisions in other states have been referred to as "Little RICO" Acts because they were modeled after the federal "RICO" statute, 18 U.S.C. §§ 1961 to 1968 (1970) (Racketeer Influenced and Corrupt Organizations Act). After Bell's conviction, Utah's statute was amended and renamed the "Pattern of Unlawful Activity Act." Utah Code Ann. §§ 76–

10–1601 to –1609 (Supp.1987). *See State v. McGrath,* 749 P.2d 631 (Utah 1988) (affirming the RICE conviction of an individual charged as a result of the same investigation that led to Bell's indictment); *see also Bradford v. Moench,* 670 F.Supp. 920, 928 (D.Utah 1987) (noting the similarity between RICE and RICO).

At the time of Bell's arrest in 1983, the statute, in pertinent part, read:

 76–10–1602. Definitions. As used in this part:

grand jury also indicted several other individuals associated with the group that prosecutors termed the "Molly Kingston organization." A number of other persons investigated were granted immunity, and some were required to testify against Bell.

Bell was tried before a jury, found guilty of racketeering, and sentenced to one to fifteen years' imprisonment. In a subsequent forfeiture proceeding, for which a jury was waived, the trial judge found that Bell had used his convenience store as a "vehicle of sale" of the cocaine and had invested proceeds of the cocaine dealing in the store. Pursuant to section 76–10–1603 of the Code, the court ordered the forfeiture of the convenience store and the land on which it is located. Pending the outcome of this appeal, service of the prison term was stayed and Bell was allowed to post a bond and continue to possess and operate the store.

Bell raises a plethora of claims. Because of the disposition we make of his appeal, we address only a few of them. Determinative of Bell's appeal is his claim that he was given insufficient notice of the particulars of the charges against him.

The indictment against Bell consisted of a verbatim reprinting of the RICE statute and a simple allegation that Bell had violated the statute sometime between September 1982 and June 1983. Bell complained that the indictment was too vague and requested a bill of particulars. The State initially refused to provide a bill. Bell obtained a court order requiring one, and after much delay, the State provided a bill which Bell then challenged as also being too vague to give him adequate notice of

(1) "Racketeering" means any act committed for financial gain which is illegal under the laws of Utah regardless of whether such act is in fact charged or indicted, involving:
. . .;
(1) Trafficking in controlled substances, explosives, weapons or stolen property;
. . .;
(v) The soliciting, requesting, commanding, encouraging, or intentionally aiding another in commission of any of the above enumerated offenses;
(w) Conspiracy to commit any of the above enumerated offenses; or
(x) An attempt to commit any of the above enumerated offenses.
(2) "Person" includes any individual or entity capable of holding a legal or beneficial interest in property.
(3) "Enterprise" means any individual, sole proprietorship, partnership, corporation, business trust, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity, and includes illicit as well as licit entities.
(4) "Pattern of racketeering activity" means engaging in at least two episodes of racketeering conduct which have the same or similar objectives, results, participants, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated events, provided at least one of such episodes occurred after the effective date of this part and the last of which occurred within five years after the commission of a prior episode of racketeering conduct.
76–10–1603. Unlawful acts—Felony—Forfeitures. (1) It shall be unlawful for any person who has received any proceeds derived, whether directly or indirectly, from a pattern of racketeering activity in which such person has participated, as a principal, to use or invest, directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any interest in, or the establishment or operation of, any enterprise.
(2) It shall be unlawful for any person through a pattern of racketeering activity to acquire or maintain, directly or indirectly any interest in or control of any enterprise.
(3) It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, whether directly or indirectly, in the conduct of such enterprise's functions through a pattern of racketeering activity.
(4) It shall be unlawful for any person to attempt or to conspire to violate any provision of subsections (1), (2), or (3) of this section, or to solicit, request, command, encourage, or intentionally aid another in the violation of any of the provisions of subsections (1), (2), or (3) of this section.
(5) Whoever violates any subsection of section 76–10–1603 shall be guilty of a second degree felony and in addition to the penalties prescribed by law shall forfeit to the state of Utah:
(a) any interest acquired or maintained in violation of section 76–10–1603; and
(b) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over any enterprise which he has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 76–10–1603 of this act.

the charge. The State refused to amend the bill of particulars, and the trial court rejected Bell's timely and persistent challenges to the adequacy of the notice he had received.

On appeal, Bell argues that the indictment alone was too vague to give him adequate notice of the charges, that the State's response to his request for a bill of particulars was wholly inadequate, and that the trial court erred in not sustaining his objections on that ground and in refusing to grant a new trial. More specifically, Bell contends that the notice he received was inadequate to inform him of the State's factual allegations as to what constituted an "enterprise" within the meaning of the RICE statute. Because the existence of an "enterprise" is an essential element of RICE crimes,[2] Bell argues that the inadequate notice given on this point prejudiced his ability to prepare a defense, thus denying him the right to notice guaranteed by the Utah Constitution[3] and by Utah Rule of Criminal Procedure 4.[4]

The State argues that Bell was put on notice of the factual basis for the enterprise allegations by various documents, other than the indictment and the bill of particulars, and by information presented during various pretrial hearings.

Article I, section 12 of the Utah Constitution guarantees, "In criminal prosecutions the accused shall have the right ... to demand the nature and cause of the accusation against him [and] to have a copy thereof." Utah Const. art. I, § 12. In *State v. Fulton,* 742 P.2d 1208 (Utah 1987), *cert. denied,* — U.S. ——, 108 S.Ct. 777, 98 L.Ed.2d 864 (1988), we explained that this provision requires "that the accused be given sufficient information 'so that he [or she] can know the particulars of the alleged wrongful conduct and can adequately prepare his [or her] defense.'" *Id.* at 1214 (quoting *State v. Burnett,* 712 P.2d 260, 262 (Utah 1985)); *see also State v. Taylor,* 14 Utah 2d 107, 108, 378 P.2d 352, 353 (1963); *State v. Myers,* 5 Utah 2d 365, 372,

---

**2.** The existence of an "enterprise" is essential for the crimes defined by the RICE statute. In brief, the statute involves two key concepts, a "pattern of racketeering activity" and an "enterprise." Racketeering activity is defined as any of a number of listed offenses, including the offense of which Bell was accused, trafficking in controlled substances. An enterprise may consist of an individual, corporation, or other business entity, or any de facto association, and may be either a legal or an illicit entity. The RICE crime is more than just the substantive offenses constituting the racketeering activity; it consists of a particular relationship between the racketeering activity and an enterprise. The RICE statute defines the various relationships between racketeering activity and an enterprise that are declared to be criminal. For example, RICE makes it a crime to use the profits of racketeering activity to acquire or maintain an interest in an enterprise. It is also a crime to use the enterprise as a vehicle for carrying on the racketeering activity. Thus, proof of the existence of an enterprise and its relationship to the racketeering activity is essential for a conviction under RICE. *See* Utah Code Ann. §§ 76–10–1601 to –1603 (Supp.1983); *State v. McGrath,* 749 P.2d 631 (Utah 1988); *State v. Thompson,* 751 P.2d 805 ((Utah Ct.App.1988); *cf. Bradford v. Moench,* 670 F.Supp. 920, 928–30 (D.Utah 1987) (elements of civil RICE and RICO claims).

**3.** Bell also bases his claim on the federal sixth amendment. U.S. Const. amend. VI. We need not address that argument because we base our

holding here independently on state law. We emphasize that our holding does not rely on interpretation of the federal constitution. *See Michigan v. Long,* 463 U.S. 1032, 1040–42, 103 S.Ct. 3469, 3476–77, 77 L.Ed.2d 1201, 1213–15 (1983).

**4.** Bell also makes a closely related argument, that the State was improperly allowed to introduce evidence and make arguments on matters outside the scope of the indictment and bill of particulars. This, he claims, violated the doctrine of variance, which is grounded in article I, section 12 of the Utah Constitution. In *State v. Myers,* 5 Utah 2d 365, 370–72, 302 P.2d 276, 279–80 (1956), and in *State v. Fulton,* 742 P.2d 1208, 1215 (Utah 1987), *cert. denied,* — U.S. ——, 108 S.Ct. 777, 98 L.Ed.2d 864 (1988), this Court explained that "an essential corollary of the defendant's right to obtain information on the alleged offense," *Fulton,* 742 P.2d at 1215, is the doctrine of variance, which prohibits the State from proving at trial "material matters beyond the scope of the bill of particulars." *Myers,* 5 Utah 2d at 372, 302 P.2d at 280; *accord State v. Burnett,* 712 P.2d 260, 261–62 (Utah 1985). Because we find for Bell on the basis of his argument that the bill of particulars was inadequate from the outset, we need not discuss further his corollary argument that the State later improperly presented matters outside the scope of that bill of particulars.

302 P.2d 276, 280 (1956).[5]

*Fulton* also explained that this constitutional right to notice is normally implemented through Utah Rule of Criminal Procedure 4, which governs, *inter alia,* the contents of informations, indictments, and bills of particulars. *See* 742 P.2d at 1214; Utah R.Crim.P. 4 (codified at Utah Code Ann. § 77–35–4 (1982)). Rule 4(b)[6] provides for the commencement of a criminal action by filing an information or indictment. Although an information may be accompanied by a fact statement detailing the prosecution's contentions in support of the charges, an information or indictment is legally sufficient even if it consists of nothing more than an extremely summary statement of the charge that would not provide the accused with sufficient particulars to prepare an adequate defense. *Fulton,* 742 P.2d at 1214; Utah R.Crim.P. 4(b). When an indictment or information legally sufficient under rule 4(b) does not provide the notice guaranteed by article I, section 12, the accused may request a bill of particulars under rule 4(e).[7] Once such a request is made, the accused is entitled to receive, and the State has the burden of providing, a written[8] bill of particulars which, in conjunction with the indictment or information, gives notice of the particulars of the charges in sufficient factual detail to enable the accused to prepare an adequate defense. *Fulton,* 742 P.2d at 1214; *State v. Robbins,* 709 P.2d 771, 773 (Utah 1985); Utah R.Crim.P. 4(e).

■ Applying these standards to the present case, the first question is whether the indictment was itself detailed enough to give Bell sufficient notice of the charges. The indictment merely repeated verbatim the broad, vague language of the RICE statute without describing any facts or circumstances constituting the crime charged other than a statement that the crime had been committed during a ten-month period.[9] This indictment met the minimal stan-

---

5. Even prior to the explicit articulation of the state constitutional basis for requiring notice in such recent cases as *Fulton* and earlier cases, such as *State v. Solomon,* 93 Utah 70, 74–76, 71 P.2d 104, 106–07 (1937), this Court followed a widely recognized general rule that notice must include sufficient details of the factual circumstances constituting the crime charged to enable the accused to know precisely what the charge is so he or she may (i) decide what plea to make, (ii) prepare a defense, and (iii) be protected from later facing additional charges based on the same circumstances. *See, e.g., State v. Topham,* 41 Utah 39, 123 P. 888 (1912).

6. Utah Rule of Criminal Procedure 4(b) provides in part:
 An indictment or information shall charge the offense ... by using the name given to the offense by common law or by statute or by stating in concise terms the definition of the offense sufficient to give the defendant notice of the charge.
 Utah R.Crim.P. 4(b).

7. Rule 4(e) provides:
 When facts not set out in an information or indictment are required to inform a defendant of the nature and cause of the offense charged, so as to enable him to prepare his defense, the defendant may file a written motion for a bill of particulars.... The ... contents of a bill of particulars shall be limited to a statement of factual information needed to set forth the essential elements of the particular offense charged.
 Utah R.Crim.P. 4(e).

8. Although rule 4(e) does not expressly provide that the bill must be written, it is apparent in reading rule 4(e) as a whole that bills of particulars must be written. Rule 4(e) speaks of "filing" a bill and explains that bills may be "amended." We take the choice of these terms as an indication that bills will be written, rather than mere oral notification. This interpretation is consistent with the requirements of the constitutional right to notice that rule 4(e) implements. The constitutional notice provision guarantees the accused a "copy" of the "accusation against him." Utah Const. art. I, § 12.

9. The indictment read:
 [B]etween September, 1982 and June 23, 1983, in Weber County, State of Utah, the said Steven Bell did receive proceeds derived, directly or indirectly, from a pattern of racketeering activity in which he or she has participated, as a principle [sic], and has used or invested, diretly [sic] or indirectly, some part of such proceeds, or in the acquisition of any interest in or the establishment or operation of any enterprise; and/or
 Through a pattern of racketeering activity has acquired or maintained, directly or indirectly, an interest in or control of an enterprise; and/or
 While employed by or associated with an enterprise did conduct or participate, directly or indirectly, in the conduct of an enterprise's functions through a pattern of racketeering activity; and/or
 Did attempt or conspire to violate any provisions of 76–10–1603(1)(2) or (3) UCA 1953 as

dards of rule 4(b), *see Fulton,* 742 P.2d at 1208, but by no stretch of the imagination did it provide Bell with sufficient notice of the facts underlying the charges to enable him to prepare an adequate defense.[10]

The next question is whether Bell exercised his right to seek more particular notice by requesting a bill of particulars under rule 4(e) and, thus, preserved his claim of error. Bell did submit a timely request that the State provide a bill of particulars describing the factual basis for the element of racketeering activity and specifically explaining "what enterprise is alleged as being involved." Therefore, under rule 4(e), the State had the burden of providing an adequate bill of particulars.

The final question is whether the State met that burden. The answer is that it did not. At first, the State ignored Bell's request. Bell then secured a court order directing that the bill be provided. The State delayed further, but ultimately provided this brief response:

1. Specific activities of racketeering include those listed in the wiretap and those provided in the transcripts of the Grand Jury.

2. As to a statement of what consitutites [sic] a racketeering activity, this calls for a legal conclusion and is beyond factual information necessary to set forth an essential elements [sic] of the offense charged. Defendant should clearly realize this.

3. Enterprise consists of the trafficing [sic] in controlled substances and investing the proceeds.

■ Before this Court, Bell focuses his argument on the enterprise element ad-dressed in paragraph 3 of the bill of particulars. He argues that the brief reply was not adequately detailed to put him on notice of the alleged factual basis for the element of an enterprise. Under rule 4(e), a bill of particulars must contain sufficient "factual information ... to set forth the essential elements of the particular offense charged." The ultimate test of the adequacy of such a statement, as noted above, is that the accused be enabled to prepare a defense.

The record shows that at trial, the State presented three theories as to who or what factually constituted the enterprise: Bell as an individual, the group of persons associated with Molly Kingston, or Bell's convenience store. By no stretch of the imagination could the single enigmatic sentence in paragraph 3 of the State's reply to Bell's request be construed as containing sufficient factual information to describe the State's actual theories of this essential element of the crime, much less to permit Bell to prepare his defense on this element.[11] Although Bell persistently objected to the inadequacy of the bill of particulars, the State refused to amend or supplement the bill as it would have been permitted to do under rule 4(e). The State failed to meet the burden of notice imposed on it by rule 4(e), and the trial court's failure to enforce this requirement was clearly error under the plain language of rule 4(e), as well as the standards described in *Fulton.*

■ The next question is whether this error was harmless or prejudicial. Because the error was in violation of a rule of criminal procedure, its harmfulness is analyzed under the standard provided by Utah Rule of Criminal Procedure 30. Utah

---

amended; or did aid another in the violation of 76–10–1603(1)(2) or (3) UCA 1953, as amended.

10. A similar conclusion was reached in *State v. Kincaid,* 78 Or.App. 23, 714 P.2d 624 (1986). In that case, the Oregon court found that an indictment framed only in the vague terms of that state's analogous "ORICO" statute was insufficient to give the particularity of notice required by a criminal procedure rule under which charging instruments must describe "the 'acts constituting the offense in ordinary and concise language ... and in such manner as to enable a person of common understanding to know what is intended.'" 78 Or.App. at 27, 714 P.2d at 626 (quoting Or.Rev.Stat. § 132.550(7) (1987)).

11. We also have questions as to the adequacy of the notice on the element of racketeering activity provided by the other two paragraphs of the bill of particulars, but need not address them to dispose of this appeal. *But cf. Bradford v. Moench,* 670 F.Supp. 920, 928–30 (D.Utah 1987) (discussing a "strict pleading requirement" on allegations of racketeering activity for civil RICE and RICO actions).

R.Crim.P. 30(a) (codified at Utah Code Ann. § 77-35-30(a) (1982)).[12] Under rule 30, an error in a criminal prosecution requires reversal when we conclude that, absent the error, there was a reasonable likelihood of a result more favorable to the accused. *State v. Knight,* 734 P.2d 913, 919-21 (Utah 1987). Phrased differently, the test is whether our confidence in the outcome of the trial is eroded. *Id.* at 920. Applying the erosion of confidence test to a failure to give adequate notice of charges, we first ask how the error impeded the accused's ability to prepare for trial and to meet the State's case. At trial, the State presented three alternative theories as to what constituted the essential element of an enterprise. The specific question, then, is whether the State's failure to notify Bell of these three factual bases for the allegations of a RICE enterprise so impeded his ability to prepare a defense to those allegations as to require a reversal under rule 30.

Ordinarily, the practical effect of the standard imposed by rule 30 is to place on the accused the burden of persuading this Court that, in light of all the circumstances revealed through the record as a whole, there is a reasonable likelihood that the trial result would have been more favorable absent the error. *See Knight,* 734 P.2d at 919-21; *State v. Jones,* 657 P.2d 1263, 1267 (Utah 1982); *State v. Hamilton,* 18 Utah 2d 234, 239, 419 P.2d 770, 773 (1966). However, as we stated in *Knight,* in some circumstances the nature of the error involved is such that this de facto burden should be shifted and the State required to persuade us that the error was harmless. 734 P.2d at 920-21. In *Knight,* the prosecution violated the rules of dis-

covery by failing to provide the accused with certain evidence prior to trial. We first found that because of the nature of the error, it was difficult for this Court to determine from the record whether Knight might have been able to prepare a better defense and achieve a more favorable result at trial if the prosecution had not breached its discovery obligations. *Id.* at 920. We then held that under such circumstances, if the accused could make a credible argument that the prosecutor's errors impaired the defense, it would be appropriate "to place the burden on the State to persuade a court that the error did not unfairly prejudice the defense." *Id.* at 920-21.

We are faced with analogous circumstances in this case. First, as in *Knight,* the record "cannot reveal how [adequate notice of the charges] would have affected the actions of defense counsel, either in preparing for trial or in presenting the case to the jury." *Id.* at 920. Second, Bell has met the requirement of making "a credible argument that the prosecutor's errors have impaired the defense." *Id.* at 921.

In *Knight,* we noted that in assessing whether the defendant's argument of prejudicial impairment rang sufficiently true to warrant shifting the burden of persuasion to the State, we would take into account the centrality of the matter affected by the prosecutor's errors. *Id.* In this case, the error involved an essential element of the crime charged. Clearly Bell's defense to the State's case on the element of an enterprise was central to the outcome, and therefore, the error "assumes heightened importance when evaluating whether the

---

**12.** Rule 30(a) provides: "Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." Utah R.Crim.P. 30(a).

Bell has challenged the inadequate bill of particulars as violative of provisions of both the state and federal constitutions as well as Utah Rule of Criminal Procedure 4(e). As discussed in *State v. Bishop,* 753 P.2d 439, 499-500 (Utah 1988) (Zimmerman, J., concurring, joined by Stewart, A.C.J., and Durham, J.), the standard of harmless error applicable to violations of the federal constitution differs from the standard applicable under our state rules of evidence and

procedure. And this Court has never squarely decided whether violations of the Utah Constitution must be addressed under the federal constitutional standard of "harmless beyond a reasonable doubt" or the lesser "erosion of confidence" standard of rule 30 we employ in analyzing state law issues of nonconstitutional dimensions. *Id.* at 500. Because we find that the error in this case was harmful under the "erosion of confidence" standard applicable for a bill of particulars which fails to meet the statutory requirements of rule 4(e), we need not address the standards applicable under the state or federal constitution.

defense might have been impaired." *Id.* Bell contends that the prosecution's failure to sufficiently notify him of the factual basis for its allegations left him unable to make pretrial preparation for a defense or to counter the State's evidence and arguments at trial. Given the plausibility of this contention and the critical nature of the issue involved, we conclude that Bell has made a credible argument that his defense was impaired by the error.

■ Under *Knight*, then, we place on the State the burden of persuading us that the error was harmless under the standard of rule 30. The State makes only one argument in attempting to meet this burden. It argues that Bell was not prejudiced because he was effectively put on notice of the State's various theories of what constituted the element of an enterprise through the course of certain pretrial proceedings. The State refers to a complaint filed in a separate proceeding seeking forfeiture of Bell's convenience store,[13] to an in-court discussion at a hearing on that forfeiture complaint, and to materials provided to Bell through pretrial discovery, including transcripts of grand jury witnesses' testimony and transcripts of telephone conversations recorded pursuant to a wiretap order. The State argues that through reading the indictment and bill of particulars in the context of these other sources of information, Bell must have gotten adequate notice of the charges.

This argument fails. Our review of the record leaves us unconvinced that Bell did in fact receive adequate notice through these convoluted means. None of the sources pointed to by the State explicitly laid out the three enterprise theories later presented at trial. Nor do we think that the three allegations are necessarily implicit in these sources of information, even when they are taken as a whole. Thus, the State has failed to meet its burden.

Also, we think it important to clarify that we reject the implication of the State's argument: that the State, having failed to provide even a minimally adequate bill of particulars despite persistent requests from Bell, can excuse that failure under the guise of harmless error by claiming that Bell had pretrial access to a mass of various items of information from which, one can conclude in hindsight, Bell could have gleaned the State's theories for the essential elements of the crimes charged. For this Court to accept such an argument would not only vitiate the specific requirements of rule 4(e), it would negate the accused's constitutional right, implemented by rule 4(e), to "have a copy" of a document setting out in clear terms "the nature and cause of the accusation." Utah Const. art. I, § 12; *State v. Fulton*, 742 P.2d at 1214. A defendant, having complied with the procedural requirements of rule 4(e) in requesting a bill of particulars, ought not to have to look beyond the indictment or information and the bill of particulars to obtain sufficient notice of the specific allegations to be faced at trial.

The State has not met its *Knight* burden of persuading this Court that the failure to provide an adequate bill of particulars did not unfairly prejudice Bell's ability to prepare and present a defense. Therefore, we reverse Bell's conviction and remand for a new trial with instructions that Bell be given an adequate bill of particulars.[14]

■ Bell has also appealed from the order forfeiting his interest in the convenience store. He claims numerous errors

---

**13.** The State was somewhat unsure about how to seek forfeiture of Bell's assets pursuant to the RICE forfeiture provisions. Prior to the criminal trial, it filed a separate civil complaint seeking forfeiture of Bell's store, and Bell moved to strike that complaint. Eventually, the forfeiture order was entered through the criminal proceeding.

**14.** As a final note on this issue, we find it difficult to understand why the State's attorneys were so uncooperative when Bell attempted to divine the factual basis of the charges against him. The phrasing of the bill of particulars and the State's behavior throughout pretrial proceedings reflected a degree of belligerence and evasiveness that is plainly inappropriate prosecutorial conduct. Such tactics encroach on a defendant's right to notice and fall below the minimum compliance with rule 4(e) that could be justified under the Rules of Professional Conduct. *See* rule 3.4(c), (d), Utah Rules of Professional Conduct.

in the proceedings leading to that forfeiture order. Because we have reversed the conviction on which the forfeiture order rested, we also vacate the forfeiture order without considering the various claims of error.[15]

Bell has raised a large number of other claims of error with regard to the pretrial and trial proceedings, some of which are plainly frivolous. Given our reversal of the conviction and remand for retrial, we need not sort what is arguably wheat from chaff in all of those thirty-five claims. However, some of the issues are likely to recur in a new trial and are of arguable merit, and in the interest of judicial economy, we will briefly address them to provide the trial court with some guidance. *See State v. Cloud,* 722 P.2d 750, 755 (Utah 1986).

Bell argues that the RICE statute violates the due process clause of the fourteenth amendment [16] because it is so vague that it "fails to inform an ordinary citizen who is seeking to obey the laws as to the conduct sought to be proscribed," *State v. Bradshaw,* 541 P.2d 800, 802 (Utah 1975).

The Utah Court of Appeals recently considered a similar argument in *State v. Thompson,* 751 P.2d 805, 815 (Utah Ct. App.1988), and found that the RICE Act does not deny due process on this ground. Bell has presented no persuasive arguments for holding differently on the record now before us, and we decline to do so.[17] We note that the federal RICO statutes after which RICE is patterned have been upheld against similar vagueness challenges. *See, e.g., United States v. Tripp,* 782 F.2d 38, 42 (6th Cir.), *cert. denied,* 475 U.S. 1128, 106 S.Ct. 1656, 90 L.Ed.2d 199 (1986), and cases cited therein.

We do, however, recognize that the RICE statute is broad in scope and is phrased in vague terms. As Bell has argued, this breadth and vagueness creates a related problem, the difficulty of framing jury instructions based on the elements of the crime as they are defined by the statute. On remand, we caution the trial court to examine the instructions to ensure that they give the jury a more explicit understanding of the elements of the particular crime charged than is possible with instruc-

---

**15.** We note, however, that any future forfeiture order in this case and other cases arising under the RICE statute and its successor, Utah Code Ann. §§ 76–10–1601 to –1609 (Supp.1987), should be supported by findings and conclusions sufficient to enable an appellate court to determine the relationship between the theory on which the racketeering conviction is based and the basis for finding that the property is subject to forfeiture. We have previously explained the need for similarly detailed findings in cases arising in various areas of the law. *See, e.g., State v. Lafferty,* 749 P.2d 1239, 1260 & n. 16 (Utah 1988) (findings and conclusions required on existence of aggravating factors in sentencing phase of capital cases); *Gardner v. Gardner,* 748 P.2d 1076, 1078 (Utah 1988) (findings and conclusions required to support property distribution in divorce decree); *Acton v. Deliran,* 737 P.2d 996, 999 (Utah 1987) (detailed findings required in contract action); *State v. Nelson,* 725 P.2d 1353, 1355 n. 3 (Utah 1986) (findings required to support ruling admitting hearsay statements of child sex abuse victim); *In re Clatterbuck,* 700 P.2d 1076, 1081 (Utah 1985) (detailed findings required to support order certifying juvenile to stand trial as adult).

**16.** Bell has not raised, and therefore we do not reach, the question of whether the statute might

run afoul of provisions of our state constitution. *See State v. Lafferty,* 749 P.2d at 1247 n. 5.

**17.** RICE is, in fact, extraordinarily broad in scope and is phrased in terms which are imprecise and difficult for lay persons to fathom. However, to some extent, the harm sought to be protected against by the due process clause of the fourteenth amendment is not present with RICE because the various types of "racketeering activity" that RICE punishes are already made criminal by other statutes which do not suffer from problems of vagueness. For example, in the present case, trafficking in controlled substances was already defined as a crime before RICE was enacted. Therefore, Bell was on notice that his alleged drug dealing activities were criminal, although he may not have understood that the far-reaching penalty provisions of RICE would apply.

Although we decline to hold that the statute is so vague as to facially violate the fourteenth amendment due process clause, we recognize that the vagueness creates some problems. As we have already explained, an indictment that does nothing more than recite the language of the statute is inadequate to give the detailed notice of charges required by rule 4(e) and article I, section 12 of the Utah Constitution.

tions which merely repeat the statute.[18]

Bell also claims error in allowing the jury to render a general verdict rather than a special verdict or general verdict with interrogatories. Given our disposition of this appeal, we do not reach the claim of error. However, we note for future reference that the RICE statute lends itself to confusion, particularly in cases such as this, in which the State presents multiple theories as to what constitutes the enterprise, the pattern of racketeering activity, and the relationship between these elements. Appellate review of such cases would be greatly enhanced by a form of verdict which would allow the appellate court to determine on which of the various theories the jury based its decision.[19] *See* Utah Code Ann. §§ 76–10–1601 to –1609; Utah R.Civ.P. 49 (made applicable to criminal cases by Utah R.Civ.P. 81(e)); *cf. State v. Lafferty,* 749 P.2d 1239, 1260 & n. 16 (Utah 1988) (asserting this Court's supervisory powers to require that sentencing bodies, whether judge or jury, make certain written findings to aid in appellate review); *United States v. Coonan,* 839 F.2d 886, 889–91 (2d Cir.1988) (finding the use of interrogatories and special verdicts proper in RICO cases).

Next, Bell claims that he was wrongfully denied access to transcripts of testimony given before the grand jury. Bell obtained a court order compelling the State to produce transcripts of testimony pertaining to Bell. Before the trial, he was provided with transcripts of testimony given prior to the time he was indicted. The grand jury continued taking testimony after Bell's indictment because it was investigating other targets. Bell claims he was given only incomplete, and therefore inadequate, access to transcripts of some pertinent testimony given after his indictment. This, he contends, was in violation of the court order and prejudiced his ability to prepare a defense.[20] The briefs of both parties and the record provided here are inadequate to enable us to determine whether the State failed to comply with the discovery order and whether any such failure constituted prejudicial error. Under these circumstances, we decline to do more than express a concern that Bell be given access to transcripts of testimony that he is entitled to under the discovery provisions of the Utah

**18.** The instructions, like the indictment in this case, did little more than recite the language of the RICE statute without reference to specific facts and circumstances of the alleged criminal conduct. Bell argues that as a consequence of this, the instructions were so unclear that the jury may not have understood precisely what factual findings it had to make to find Bell guilty. Instructions should be sufficiently clear that they adequately advise the jury on the law pertinent to the case. *See State v. Schaffer,* 638 P.2d 1185, 1187 (Utah 1981); Utah R.Crim.P. 19(a) (codified at Utah Code Ann. § 77–35–19 (1982)). We agree that the RICE statute is phrased in terms so vague and unfamiliar to lay jurors that instructions which merely repeat the statute verbatim may not be adequate. And the problem was compounded by the State's mixing of theories as to what constituted the element of an enterprise. Rather than merely repeating the statute, the better course would be to give instructions which explain the necessary elements of the RICE crime in clear language that is tailored to fit the specific legal theory or theories of the crime and the factual basis for the theories as they are charged in the indictment and clarified in the bill of particulars. As we said in *State v. Gallegos,* 16 Utah 2d 102, 105, 396 P.2d 414, 416 (1964), the court "should mold the instructions to fit the facts shown, using

language understood by lay people and blend the instructions to fit the facts disclosed by the evidence and make them as clear in meaning and concise as possible without requiring belabored legal definitions." *Accord Johnson v. Cornwall Warehouse Co.,* 16 Utah 2d 186, 188, 398 P.2d 24, 25 (1965).

**19.** Despite the inferences drawn by Justice Stewart, nothing in this opinion should be taken to suggest that trial courts must invariably use special verdicts or interrogatories in RICE cases. We only observe that they are helpful and may be particularly appropriate in such cases. We certainly do not mean to require them when the defendant prefers a general verdict.

**20.** Bell also contends that inadequate access to the transcripts has impeded his ability to support certain arguments he has made on appeal regarding error in the convening of the grand jury and the handing down of the indictment. We find all of his arguments regarding the propriety of the grand jury proceedings to be without merit. Therefore, the trial court need not be concerned on remand with giving Bell access to transcripts for the purpose of further supporting arguments that he has already made to us challenging the grand jury proceedings.

Rules of Criminal Procedure. *See* Utah R.Crim.P. 16.

■ Bell asserts that prosecutors wrongfully interfered with his obtaining the testimony of a witness, Sherrie Prince. Prince was charged along with other members of the "Molly Kingston organization" and was allowed to enter into a plea bargain. Bell claims that Prince would have provided exculpatory testimony for Bell but for the fact that prosecutors threatened to revoke the plea bargain if she did so. He contends that this was prosecutorial misconduct and violated his right to present a defense. As the State argues, there is some doubt as to whether Bell adequately raised the issue with the trial court. Given our disposition of this appeal, we need not rule on Bell's claim. However, we observe that if on retrial Bell seeks to call Prince as a witness and the State interferes in the manner that Bell alleges has already occurred,[21] such intimidation of a witness would constitute an intolerable interference with Bell's right to present witnesses for his defense. *See, e.g., United States v. MacCloskey,* 682 F.2d 468, 479 (4th Cir.1982); *United States v. Henricksen,* 564 F.2d 197, 198 (5th Cir. 1977).

Bell also makes two claims of error with respect to evidence admitted at his trial. First, he argues that certain hearsay evidence was conditionally admitted subject to being "tied up" but never was tied up. The police searched the homes of several suspects and seized various pieces of paper which, according to the State, are informal records of drug transactions. Some of the papers had the name "Steve" written on them. Bell objected to the introduction of those papers on various grounds, including a hearsay objection. The State argued that they were admissible under the hearsay rule exception for business records. Utah

Rule of Evidence 803(6) provides for the admission of hearsay materials which are records kept of regularly conducted activities, so long as certain foundational requirements are met. *See, e.g., State v. Sutton,* 707 P.2d 681, 683 (Utah 1985); *State v. Bertul,* 664 P.2d 1181, 1183 (Utah 1983). Bell now argues that the State never tied up the evidence by laying adequate foundation to show that the papers met the requirements of the business records exception. If the State should offer these papers as evidence in a new trial and argue their admissibility under rule 803(6), we caution the trial court to scrutinize carefully the evidence and the circumstances under which it is offered to ensure that the papers are admissible under the hearsay rule exception.

Second, Bell claims that the State was improperly allowed to introduce evidence of other crimes he may have committed but which were not charged. A few days prior to the trial, the State sought to amend the indictment to include additional incidences of drug trafficking. That motion was properly denied because of the likelihood of unfair surprise to Bell. At trial, however, the State's witnesses were allowed to testify about numerous sales and purchases of drugs made by Bell and employees at Bell's store which occurred before the period of time set out in the indictment. The court did give a limiting instruction concerning this evidence.

Bell argues that the prior illegal activities were irrelevant to the crimes actually charged and that the evidence should have been excluded under Utah Rule of Evidence 403 because any relevance was outweighed by prejudicial effect on the jury. He also argues that the limiting instruction was inadequate. The State counters that

---

**21.** According to Bell's brief, the interference took place as follows: Prince was the author of certain documents which apparently represented accountings of drug transactions with someone identified only as "Steve." These documents were introduced at Steve Bell's trial. Bell claims that Prince would have testified that Bell was not the "Steve" referred to in the documents. As part of Prince's plea bargain, she was promised that she would not have to testify

against her friends and family members involved in the drug ring. When Bell's counsel raised the idea of having Prince testify on Bell's behalf, prosecutors called Prince's attorney and warned him that if Prince did so testify, they would view it as a violation of the bargain and would force her to testify for the prosecution in other cases. After that call, Prince refused to voluntarily testify on Bell's behalf.

the evidence was properly admitted under Utah Rule of Evidence 404(b), which allows the admission of evidence of other crimes only for certain limited purposes, including proof of motive and intent. *See* Utah R.Evid. 404(b). The record does not clearly indicate on what basis the trial court admitted the evidence or whether it considered the potential prejudicial effect of the evidence under rule 403.

We agree with Bell that this evidence has a high potential for prejudice. It is distinctly possible that this evidence influenced the jury to convict Bell without regard to the strength of the evidence on the crimes actually charged. On remand, we caution the trial court to admit the evidence of other crimes only after it has conducted a careful weighing of the probative value and potential prejudicial effect of the evidence and has found it admissible. *See* Utah R.Evid. 403.[22]

 Bell also argues that the limiting instruction given was inadequate to overcome the prejudicial effects of the other crimes evidence. The instruction was merely a general instruction that made no reference to specific evidence.[23] We agree with Bell that under the circumstances, such a general instruction, given at the end of the trial, was unlikely to overcome any undue prejudice caused by admission of the evidence. On remand, if the trial court finds the evidence admissible under rules 404(b) and 403, we caution it to consider whether the prejudicial effects of the evidence might best be overcome by expressly limiting its admission so as to make plain the narrow purposes for which it may legitimately be considered.

Bell's remaining arguments have been considered and found either lacking in merit or likely to be obviated by the reversal and remand for retrial.

We reverse the conviction for violation of the RICE statute, vacate the forfeiture order, and remand with instructions that Bell be granted a new trial.

HALL, C.J., and DURHAM, J., concur.

HOWE, Associate C.J., concurs, but does not join in footnote 14.

STEWART, Justice: (concurring in part and dissenting in part).

I concur in the result and in the majority opinion, except for one point.

The Court states that in future cases trial courts should use special verdicts or general verdicts with interrogatories in RICE cases. I submit that that procedure, without a defendant's permission, would result in a fundamental change in the criminal law and would prejudice a defendant's right to trial by jury as it has historically existed. The Court's rationale for the new procedure is that "[a]ppellate review of such cases would be greatly enhanced by a form of verdict which would allow the appellate court to determine on which of the various theories the jury based its decision." *See* Utah Code Ann. §§ 76–10–1601 to –1609; Utah R.Civ.P. 49 (made applicable to criminal cases by Utah R.Civ.P. 81(e)); *cf. State v. Lafferty,* 749 P.2d 1239, 1260 & n. 16 (Utah 1988). The Court is quite correct that the procedural reform it suggests would facilitate appellate review, but that is not a sufficient justification, in my view, for the potential damage to the right of trial by jury.

What is at stake is the principle that a defendant is entitled to a general verdict of guilty or not guilty in a criminal case. From time immemorial, general verdicts have been rendered in criminal cases and courts operating in the common law tradi-

**22.** For a recent discussion of the application of rules 403 and 404 to evidence of other crimes, see *State v. Bishop,* 753 P.2d 439, 496 (Utah 1988) (Zimmerman, J., concurring in the result, joined by Stewart, A.C.J., and Durham, J.).

**23.** The instruction read:
You are instructed the evidence of other crimes, wrongs, or acts is not admissible to

prove the character of a person in order to show that he acted in conformity therewith. However, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
This is a near-verbatim repetition of the contents of Utah Rule of Evidence 404(b).

tion have viewed the general verdict as an important device which allows juries to protect against overly harsh or rigid applications of the law. By the procedural device of a general verdict, a jury can more easily assert the ethical standards of the community against oppressive applications of the law than it can if it is required to respond only to specific and narrow factual inquiries. The point was explained by Judge Newman in a concurring and dissenting opinion in *United States v. Ruggiero*, 726 F.2d 913, 925–30 (2d Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984):

> Various considerations underlie the opposition to jury interrogatories in criminal cases. There is apprehension that eliciting "yes" or "no" answers to questions concerning the elements of an offense may propel a jury toward a logical conclusion of guilt, whereas a more generalized assessment might have yielded an acquittal. The possibility also exists that fragmenting a single count into the various ways an offense may be committed affords a divided jury an opportunity to resolve its differences to the defendant's disadvantage by saying "yes" to some means and "no" to others, although unified consideration of the count might have produced an acquittal or at least a hung jury.... In general, those opposing interrogatories fear that any particularization of the jury's decisionmaking will risk interferences with the jury's romantic power of nullification, or as Learned Hand felicitously phrased it, "tempering [the law's] rigor by the mollifying influence of current ethical conventions." *United States ex rel. McCann v. Adams*, 126 F.2d 774, 776 (2d Cir.), *rev'd on other grounds*, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942).

*Id.* at 927 (footnote omitted). Another authority has written:

> "It is one of the most essential features of the right of trial by jury that no jury should be compelled to find any but a general verdict in criminal cases, and the removal of this safeguard would violate its design and destroy its spirit."

*United States v. Spock*, 416 F.2d 165, 181 (1st Cir.1969) (quoting G. Clementson, *Special Verdicts and Special Findings By Juries* 49 (1905)). Other historical materials and analyses are referred to and discussed in *United States v. Spock*, 416 F.2d at 180–83.

Speaking of jury interrogatories and special verdicts generally, Justices Black and Douglas wrote:

> Such devices [i.e. special verdicts and jury interrogatories] are used to impair or wholly take away the power of a jury to render a general verdict. One of the ancient, fundamental reasons for having general jury verdicts was to preserve the right of trial by jury as an indispensable part of a free government. Many of the most famous constitutional controversies in England revolved around litigants' insistence, particularly in seditious libel cases, that a jury had the right to render a general verdict without being compelled to return a number of subsidiary findings to support its general verdict. Some English jurors had to go to jail because they insisted upon their right to render general verdicts over the repeated commands of tyrannical judges not to do so. Rule 49 [of the Federal Rules of Civil Procedure] is but another means utilized by courts to weaken the constitutional power of juries and to vest judges with more power to decide cases according to their own judgments.

Statement of Mr. Justice Black and Mr. Justice Douglas on the Rules of Civil Procedure and the Proposed Amendments, 31 F.R.D. 617, 618–19 (1963). Rule 49 of the Federal Rules of Civil Procedure is almost identical to Rule 49 of the Utah Rules of Civil Procedure, the only differences being cosmetic in nature. *Compare* Fed.R.Civ.P. 49 *with* Utah R.Civ.P. 49.

Although the Federal Rules of Civil Procedure adopted special verdicts and jury interrogatories in civil cases, and so have the Utah Rules of Civil Procedure, neither jurisdiction has adopted those devices in criminal cases, and I would not do so now in the manner proposed. I readily concede the difficulty in having to review a RICE conviction for sufficiency of the evidence

without knowing what theory or theories provided the foundation for conviction. Typically, RICE cases are tried on alternative theories of liability, thereby compounding the complexity of judicial review, but that does not, in my view, warrant forcing a jury into a form of decision making that will in effect deprive it of its "equity" or "mercy" functions.

I would, however, agree that the reform proposed would be appropriate if the use of special verdicts and jury interrogatories was contingent upon the defendant's consent. That is, jury interrogatories and special verdicts may be used at the defendant's behest to enhance the accuracy of the fact finding process. The prosecution, of course, is not entitled to the same option since it does not have a constitutional right to a jury trial.

In *United States v. Coonan*, 839 F.2d 886 (2d Cir.1988), the court approved the use of a special verdict in a criminal case, but only with the defendant's consent. The majority cites *Coonan* as authority for its position, but fails to note that the defendant's consent in *Coonan* was obtained before departure from the standard procedure of using a general verdict. Furthermore, the use of the special verdict in *Coonan* was to ensure the defendant of fair and accurate fact finding, not to assist an appellate court's review function.

Utah law does not support the majority's unsolicited innovation. *State v. Lafferty*, 749 P.2d 1239, 1260 & n. 16 (Utah 1988), simply indicated that specific findings should be made under certain circumstances in the penalty phase of capital homicide cases. Furthermore, the majority's reliance on Rule 81(e) of the Utah Rules of Civil Procedure is misplaced in my view. The rules of civil procedure were not intended to effectuate a basic change in criminal procedure. Moreover, Rule 21 of the Utah Rules of Criminal Procedure specifically deals with verdicts and verdict forms in criminal cases, and it does not authorize special verdicts or jury interrogatories.